THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JOHN T. SMITH, Defendant-Appellant.

Fifth District No. 5—87—0752

Opinion filed March 7, 1990.

Daniel M. Kirwan and Rita K. Peterson, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

John Baricevic, State's Attorney, of Belleville (Kenneth R. Boyle, Stephen E. Norris, and Debra A. Buchman, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE CHAPMAN delivered the opinion of the court:

The defendant, John T. Smith, was charged with murder in the death of Steve Smith (no relation). After a jury trial, the defendant was found guilty of voluntary manslaughter and was sentenced to six years' imprisonment. On appeal, the defendant contends that: (1) he was denied a fair trial because the jury was improperly instructed; (2) his defense counsel was ineffective; (3) the trial court considered improper factors in sentencing the defendant; and (4) he is entitled to two additional days' credit against his sentence of imprisonment.

Although the testimony of the witnesses differs with regard to various details, there was general agreement concerning the series of

events which culminated in the shooting of Steve Smith. The defendant and the victim were at the house of their friend, Johnnie Bean, at 9:30 p.m. on January 21, 1987. Bean's two brothers, Steven and Dion, were also present, as was Damon Williams. The victim was trying to sell some shirts, which were apparently stolen, to Steve Bean. The defendant advised Steve not to buy the shirts because the asking price was too high. This angered the victim, who told the defendant to "stay out of his business" and that "if he was on the streets *** he would get killed." Thereafter the defendant remained quiet, but a short time later the victim, apparently still angry, began to demean the defendant, calling him a "punk" and making fun of his clothes. The victim then asked the defendant to "come walk with him outside" after Johnnie Bean told them not to argue ·in his house. Everyone went outside, and the defendant and the victim walked near the driveway. The victim pushed the defendant and they began fighting. After some minutes the defendant got the upper hand in the fight, and was on top of the victim, and the defendant then indicated that he wished to stop fighting. Steve Bean then broke up the fight. The victim then began arguing with Steve Bean, threatening to "whoop" him.

After the fight was broken up the defendant went home and got a .22 caliber rifle. He returned to the Bean residence, carrying the rifle, 5 to 10 minutes after the fight had ended. The victim was still outside the Bean residence, and as the defendant approached, the defendant fired a shot into the street. Upon hearing the shot and seeing the defendant, the victim ran a short distance away, out of the sight of the defendant. About that time a police car drove nearby and the defendant threw the rifle on the ground. After the car had gone, the defendant picked the rifle up and started up the porch steps of the Bean residence. The victim suddenly appeared near the porch, saying "shoot me punk motherfucker" or "if you want to be a man and shoot me, shoot me." The testimony indicated that the victim then rushed at or lunged at the defendant, and the defendant turned and shot the victim, firing three to five times. There was conflicting evidence concerning whether the defendant continued to fire at the victim after he had fallen on the ground. It was established at trial that the defendant's rifle had a lever action which had to be operated each time before a shot could be fired.

After he was shot, the victim got up, ran across the street and collapsed. The defendant ran home. An autopsy revealed that the victim had been shot in the upper left chest, the left buttock, and in the back of the left upper arm. The victim died as a result of blood loss from the wounds.

The defendant's theory at trial was that he had acted in self-defense. He testified that he thought the victim was armed, although he did not state that he ever saw a weapon. Some of the witnesses testified that the victim was a dangerous person who was known to carry and sell guns. In a statement given to the police after his arrest, the defendant did not mention that he thought the victim was armed. In addition, the defendant's statement indicated that he saw the victim begin walking back towards him, challenging him to shoot, at a distance of one-half of a city block. The jury found the defendant guilty of voluntary manslaughter.

The defendant first contends that he was denied a fair trial because the jury was instructed on the use of force by an initial aggressor. At the conference on jury instructions, defense counsel objected to People's instruction No. 12 (Illinois Pattern Jury Instructions, Criminal, No. 24—25.09 (2d ed. 1981)) (hereinafter IPI Criminal 2d No. 24—25.09), which read:

> "A person who initially provokes the use of force against himself is justified in the use of force only if the force used against him is so great that he reasonably believes he is in imminent danger of death or great bodily harm, and he has exhausted every reasonable means to escape danger other than the use of force which is likely to cause death or great bodily harm to the other person."

The instruction was given over the defendant's objection. The court also gave, without objection, an instruction on self-defense (Illinois Pattern Jury Instructions, Criminal, No. 24—25.06 (2d ed. 1981)).

The defendant maintains that the court erred in giving IPI Criminal 2d No. 24—25.09 because the victim was the initial aggressor in the instant case. The defendant argues that it is error to give such an instruction where the evidence does not show the defendant to be the initial aggressor (*People v. Slaughter* (1980), 84 Ill. App. 3d 1103, 405 N.E.2d 1295) and that in the instant case it is "undisputed" that the defendant was not the initial aggressor. The defendant contends that the events leading up to the shooting must be viewed either as one incident, in which case the victim was clearly the initial aggressor, or as three incidents, in which case the victim was the initial aggressor at the time of the shooting because he charged the defendant from behind. We do not agree.

The defendant's suggestion that the events which occurred must be viewed as either one incident or three incidents ignores an obvious alternative: that the events may be viewed as two incidents. It is clear that the initial physical confrontation between the defendant and

the victim ended when the fight was broken up and the defendant went home. The defendant then returned 5 to 10 minutes later and provoked a second, much more dangerous, confrontation with the victim when he returned carrying a loaded rifle. Whether this incident was terminated when the victim briefly fled the scene, and was then followed by a third incident in which the victim was again the aggressor was, we believe, a question for the jury to decide.

■ As the court stated in *People v. Fleming* (1987), 155 Ill. App. 3d 29, 37, 507 N.E.2d 954, 959:

> "The aggressor instruction in question states that a person may not provoke the use of force and then retaliate claiming self-defense. This instruction is appropriate and permissible when there is evidence that the defendant provoked the deadly affray. [Citation.] The giving of this instruction does not erroneously assume the defendant was the initial aggressor. [Citation.] The question of self-defense, specifically whether the defendant was the initial aggressor, is a question of fact for the jury to decide. Where there is conflicting evidence regarding the issue of self-defense, the jury should be given both the self-defense and the initial aggressor instruction so that they might decide between the conflicting evidence and apply the correct law."

Accord *People v. Santiago* (1987), 161 Ill. App. 3d 634, 515 N.E.2d 228; *People v. Ellis* (1982), 107 Ill. App. 3d 603, 437 N.E.2d 409.

■ As indicated above, we believe that the evidence presented at trial was sufficient to present a factual issue concerning whether the defendant provoked the fatal confrontation. Thus, we find that the trial court committed no error in giving the instruction.

The defendant next contends that his trial counsel was ineffective because he was unaware that the initial aggressor instruction (IPI Criminal 2d No. 24—25.09) given to the jury did not include the second paragraph of the instruction, which states:

> "or (2) he in good faith withdraws from physical contact with the other person and indicates clearly to the other person that he desires to withdraw and terminate the use of force, but the other person continues or resumes the use of force." IPI Criminal 2d No. 24—25.09.

The defendant argues that the jury could have viewed his actions in walking up the steps to the Bean residence after firing the rifle in the street as a withdrawal. Such a withdrawal, the defendant maintains, would negate the duty to retreat imposed by the first paragraph of the instruction. Absent the duty to retreat, the argument continues, the jury might have found that the defendant acted in self-

defense and rendered a verdict of not guilty.

■■ ■ Claims of ineffective assistance of counsel are evaluated under the now familiar two-prong test established by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, and adopted by our supreme court in *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246. In order to prevail, the defendant must show that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. (*Albanese*, 104 Ill. 2d at 525, 473 N.E.2d at 1255.) Moreover, a court of review " 'need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *** If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice *** that course should be followed.' " *Albanese*, 104 Ill. 2d at 527, 473 N.E.2d at 1256, quoting *Strickland*, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.

■■ We believe that there is little, if any, possibility that the results of the defendant's trial would have been different if the second paragraph of the initial aggressor instruction had been given. Contrary to the defendant's assertion, we do not believe that his act of walking up the porch steps of the Bean residence, rifle in hand, moments after firing a shot in the victim's presence, can fairly be construed as "indicat[ing] clearly to the other person that he desires to withdraw and terminate the use of force" (IPI Criminal 2d No. 24—25.09). The record indicates that the defendant was ably represented by counsel and the single error of which the defendant complains did not " 'deprive the defendant of a fair trial, a trial whose result is reliable' " (*Albanese*, 104 Ill. 2d at 525, 473 N.E.2d at 1255, quoting *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064).

The defendant next contends that the trial court erred in sentencing him because it relied on two improper aggravating factors: (1) deterrence; and (2) that the defendant's conduct caused serious harm, the loss of a life.

The defendant argues that deterrence is not a proper factor to consider in sentencing a defendant convicted of voluntary manslaughter, citing *People v. Alejos* (1983), 97 Ill. 2d 502, 455 N.E.2d 48. In *Alejos* our supreme court noted "the difficulty of thinking conceptually of 'deterring' a crime such as voluntary manslaughter which is committed on the spur of the moment and, by definition, without any

deliberation." (*Alejos*, 97 Ill. 2d at 509, 455 N.E.2d at 51.) *Alejos* did not hold, however, that deterrence cannot be considered in sentencing a defendant convicted of voluntary manslaughter. Instead, *Alejos* held that a conviction for armed violence (Ill. Rev. Stat. 1979, ch. 38, par. 33A—1 *et seq.*) cannot be predicated on voluntary manslaughter.

█ In the instant case it appears that the trial judge was concerned with deterring others from acting as the defendant had acted when, after the initial confrontation had ended, he armed himself with a deadly weapon and returned to confront the victim.

"[T]he fight had broken off at one point in time, I believe the testimony was that you went back and got a rifle. This started the whole thing over. *** You I think re-started the problems; had broken off completely at one point in time, and had you not come back, there would not have been this situation, this confrontation or this death."

We believe that the trial judge was correct in his belief that the type of unwise and provocative conduct engaged in by the defendant can be deterred. (See *People v. Sawyer* (1985), 139 Ill. App. 3d 383, 487 N.E.2d 662, *aff'd* (1986), 115 Ill. 2d 184, 503 N.E.2d 331, *cert. denied* (1987), 482 U.S. 930, 96 L. Ed. 2d 702, 107 S. Ct. 3216.) We find no error in this regard.

The defendant also maintains that the trial court erred in considering the victim's death as an aggravating factor. At the sentencing hearing the State argued that the court should consider the "ultimate bodily harm which resulted from this defendant's actions" as a factor in aggravation. Defense counsel argued that every voluntary manslaughter involves a death, that the taking of life is included in the definition of the offense, and that the loss of life should therefore not be considered as an aggravating factor. Before imposing sentence the trial court stated:

"The two factors that the State mentioned as being in aggravation stand out, there was serious harm, there was a death of an individual, and there was also—there was also the consideration is it necessary to impose a more lengthy penalty or more serious penalty in order to deter others from committing the crime of a similar kind. Those are the considerations, those are the factors in my consideration of what the sentence will be.

On the other side of the coin, though, the jury found that *** there was some provocation *** [b]ut when I consider the fact that there was a taking of a life *** I don't believe this is a probationable situation because of the fact that there was the loss of a life. ***

> On the other hand, when you did get into trouble, it really was a serious situation and caused the loss of a life. You can't bring that back.
>
> For that reason, Mr. Smith, I'm going to sentence you to a term of six years to the Department of Corrections."

In *People v. Saldivar* (1986), 113 Ill. 2d 256, 497 N.E.2d 1138, the defendant was convicted of voluntary manslaughter and sentenced to seven years in the Department of Corrections. At the sentencing hearing the prosecutor emphasized that the defendant had killed the victim. Defense counsel argued that "[b]y definition voluntary manslaughter involves a homicide. There is going to be a death." (*Saldivar*, 113 Ill. 2d at 266, 497 N.E.2d at 1142.) In considering the factors in aggravation, the trial court stated: "The number one factor in aggravation—there are some that come to a lesser degree, but the one that is probably the most serious is the terrible harm that was caused to the victim. And the victim is dead today." (*Saldivar*, 113 Ill. 2d at 272, 497 N.E.2d at 1144.) The Illinois Supreme Court held that in sentencing a defendant for voluntary manslaughter, it is permissible for the trial court to consider the force employed and the physical manner in which the victim's death was brought about. The court found, however, that

> "the circuit court's finding in aggravation was not directed at the degree or gravity of the defendant's conduct, *i.e.*, the force employed and the physical manner in which the victim's death was brought about or the nature and circumstances of the offense, including the nature and extent of each element of the offense as committed by the defendant. Rather, the record demonstrates that the circuit court focused primarily on the end result of the defendant's conduct, *i.e.*, the death of the victim, a factor which is implicit in the offense of voluntary manslaughter and which *** cannot be considered in aggravation." *Saldivar*, 113 Ill. 2d at 271-72, 497 N.E.2d at 1144.

The supreme court reduced the defendant's sentence to the statutory minimum period of incarceration of four years.

■■ We find that the instant case is controlled by *Saldivar*. It is apparent from the trial court's comments that it considered the victim's death to be a major aggravating factor in sentencing the defendant. It is also clear that it was not the manner in which the death was brought about that concerned the court, but rather, it was the fact that the end result of the defendant's conduct was the victim's death. We find, therefore, that the trial court improperly considered the victim's death as a factor in aggravation. We do not, however, reduce

the defendant's sentence as the supreme court did in *Saldivar* because we are unable to determine from the record how much weight this improper factor was accorded by the court. We therefore vacate the defendant's sentence and remand this cause to the circuit court for resentencing.

 Finally, the defendant contends, and the State agrees, that the defendant is entitled to two additional days' credit against his sentence of imprisonment for the time he spent in custody prior to posting bond. The record indicates that the defendant was arrested on January 21, 1987, and posted bond on January 23. The sheriff's report to the warden, however, listed the defendant's date of confinement as January 23, 1987. The defendant is therefore entitled to two additional days' credit against any sentence of imprisonment which may be imposed on remand. *People v. Johns* (1984), 130 Ill. App. 3d 548, 474 N.E.2d 739.

Accordingly, the defendant's conviction is affirmed. The defendant's sentence is vacated, and this cause is remanded for a new sentencing hearing and for the purpose of issuing an amended mittimus to reflect that the defendant is entitled to two additional days' credit against any sentence imposed by the circuit court.

Affirmed in part; vacated in part; and remanded with directions.

RARICK and HOWERTON, JJ., concur.