THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SHIRLEY TORRES, Defendant-Appellant.

Second District No. 2—89—0076

Opinion filed July 26, 1990.

Michael D. Walsh, of Chicago, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers and Colleen M. Griffin, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

Defendant was charged by indictment with violation of section 401(a)(2) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(a)(2)) for possession with intent to deliver 15 grams or more of a substance containing cocaine. During pretrial proceedings, defendant had three motions denied. The first was to compel the State to produce information in regard to the State's search warrant affidavit. The second was a motion for a *Franks* hearing, and the third was a motion to suppress statements defendant made following her arrest. Following a jury trial, defendant was found guilty of the count charged in the indictment, and she was sentenced to a term of 15 years' imprisonment.

On appeal, defendant raises the following issues: (1) whether the trial court erred in quashing defendant's subpoena for information relating to the State's search warrant affidavit; (2) whether the trial court erred in denying defendant a *Franks* hearing; (3) whether the trial court erred in allowing evidence concerning the purity of the cocaine; (4) whether there was prejudicial error where, at the suppression hearing, the trial court allowed the State to question defendant about the substance of the statement she wanted to suppress; (5) whether the trial court erred in denying defendant's motion to suppress statements made following her arrest; (6) whether the trial court improperly denied defendant her right to cross-examination; (7) whether defendant was proved guilty beyond a reasonable doubt; and (8) whether defendant's sentence was proper. For the reasons stated below, we affirm.

The facts are essentially as follows.

On June 2, 1988, at 5:30 p.m., Chicago police officers, working in conjunction with the Drug Enforcement Agency, executed a search warrant for defendant's residence and found a bag containing two bags of white powder and a briefcase containing a large sum of cash.

Agent August Lett testified he found a bag with the name "Lerner" in the bedroom closet which contained inside it two bags of white powder. One of the bags contained 32 smaller bags of the powder. Lett also found directly beneath the Lerner bag a briefcase containing cash totaling $42,500. Lett noticed that the closet contained

male and female clothing. There was no furniture in the bedroom as the residents were moving. He confronted defendant with the substance and the cash and arrested her. Agents Thomas Bridges and Thomas McDermott were present at this time. Lett read defendant her *Miranda* rights, reading from a card and asking defendant to state after each right whether she understood. She stated she did. Then, Agent Bridges asked defendant whether there was any more contraband in the residence and whether she had a scale. She responded, "No. I buy pre-packaged kilos." Later, at the police station, Agent Lett prepared a written rights and waiver form, which defendant refused to sign.

Agent Bridges testified that Agent Lett advised defendant of her *Miranda* rights by reading her all her rights and then asking her if she understood. Bridges asked defendant if there was any more contraband in the house, and she responded no. He also asked her if she had a scale, and she responded that she did not use a scale because she bought prepackaged kilos. Agent McDermott testified he did not recall whether Agent Lett asked separately whether defendant understood each right or whether she was asked this at the end of the reading of her rights. McDermott also did not recall whether Lett or Bridges asked the defendant questions after she was advised of her rights, though he first stated on direct examination that Agent Lett asked the questions.

The parties stipulated that the substance seized from defendant's residence was 947 grams of cocaine with a purity content of 95%. Lett and Bridges testified that one would not ordinarily possess such a large amount of high purity cocaine for personal consumption.

Betty McCain was called to testify by defendant. She testified that she was a moving company employee who had been to defendant's house to help her with her packing. On May 23, 1988, she saw the master bedroom closet and noticed male and female clothing. On May 26, 1988, she was at defendant's residence and saw a man named Diego Meza in the master bedroom.

Defendant testified that her boyfriend, Diego Meza, moved into her residence two days prior to June 2, 1988, and shared the master bedroom with her. For three months prior to this time, Meza spent much of his time at her residence. Defendant had seen the briefcase seized from her house at defendant's apartment two weeks before June 2. She remembered that, when defendant moved into her house, he carried the briefcase into her bedroom. She first testified she did not know where in the bedroom Meza put the briefcase, but on cross-examination she stated she knew it was in the closet. She did not

know there was money in it. Defendant testified that the Lerner bag was a bag she received at a store where she bought clothing the weekend before June 2. The bag did not have plastic liners when she brought it home. She never saw Meza with the bag.

Defendant told the officers when they presented her with the search warrant that there was no cocaine in her house. Defendant denied being confronted with the cocaine or the cash at her house. She saw the police take these items, but she was not confronted with them, and she was not read her rights after she was arrested. She told the police she did not have a scale, and she had nothing else in the house, but she did not state that she bought prepackaged kilos.

Other facts necessary to this appeal will be discussed within the context of their relevance to the issue to be decided.

Defendant first contends the trial court erred in quashing her subpoena *duces tecum*. Defendant subpoenaed Agent Thomas Bridges of the Chicago police department to produce information referred to in his complaint for a search warrant of defendant's residence. In his affidavit, Bridges stated he received information from an informant that the informant had been to the residence of a woman named Shirley who took him to the living room and allowed him to try some cocaine. She showed him a package that she stated was a kilogram of cocaine. Bridges stated he had worked with the informant for two years, and the information had always proved correct by surveillance. Further, on three occasions, the informant gave information which resulted in seizures of controlled substances, the cases of which were now pending in the courts. Bridges also stated he ran defendant's name through the National Narcotics and Drug Enforcement computer and learned defendant was a documented multikilo distributor of cocaine. Finally, Bridges stated that, since the time the informant had been to the residence, the police kept the residence under constant surveillance and the only person to enter or leave since that time was defendant.

Defendant subpoenaed Bridges to produce the case numbers of the three cases resulting from the informant's information and a computer printout of the information provided by the National Narcotics and Drug Enforcement computer. On appeal, defendant argues this information should have been provided because it was a reasonable request relevant to her defense. She argues that all information concerning the veracity of the affiant's statements in the search warrant complaint is available for discovery. We find defendant fails to recognize the applicable law on this issue.

■■ In *People v. Rodriguez* (1983), 119 Ill. App. 3d 575, 577, the

court pointed out that prior to the decision in *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, Illinois law prohibited a defendant from impeaching the veracity of the sworn statement in support of a search warrant. In *Franks v. Delaware*, the Supreme Court announced a limited exception to this ban, stating that, while there is a presumption of validity with respect to an affidavit supporting a search warrant, where a defendant makes a substantial preliminary showing that an affiant, knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the warrant's affidavit, defendant is entitled to a hearing if the false statement is integral to the probable cause determination. 438 U.S. at 155-56, 57 L. Ed. 2d at 672, 98 S. Ct. at 2676.

■ *Rodriguez* went on to note that, without some discovery, a *Franks* claim regarding the reliability of an informant may be difficult to prove (*Rodriguez*, 119 Ill. App. 3d at 578); however, citing *United States v. Dorfman* (N.D. Ill. 1982), 542 F. Supp. 345, it ruled that, in light of the presumption of validity of an affidavit in support of a search warrant, defendant must make some preliminary showing that the affiant's statements concerning his anonymous informant were deliberate falsehoods. (*Rodriguez*, 119 Ill. App. 3d 575.) The court ruled defendant failed to make any showing whatsoever that the affiant's statements concerning the existence or reliability of his anonymous informant were deliberate falsehoods. Therefore, defendant's wide-reaching request for police documents, including, among other things, all search warrants by the affiant officer for a two-year period, was properly denied. *Rodriguez*, 119 Ill. App. 3d at 576-78.

In *People v. O'Toole* (1987), 164 Ill. App. 3d 23, this court addressed whether a defendant was entitled to information regarding the time of the alleged meeting described in the search warrant affidavit. After discussing *Rodriguez* and *People v. Freeman* (1984), 121 Ill. App. 3d 1023, we held that defendant must meet a burden of a preliminary showing less substantial than under *Franks* (see *People v. Freeman*, 121 Ill. App. 3d at 1028-30) before disclosure would be warranted. (*O'Toole*, 164 Ill. App. 3d at 27-28.) We ruled that the trial court erred in ordering the State to divulge the time of the alleged meeting described in the affidavit because defendant failed to meet his burden of proof, however insubstantial, where defendant submitted no reasons whatsoever in support of his discovery requests regarding the underlying affidavit. (*O'Toole*, 164 Ill. App. 3d at 28.) We noted that defendant had not argued any justifications that the mention of the date in the search warrant was inadequate or made a preliminary showing impossible. *O'Toole*, 164 Ill. App. 3d at 28.

■ *O'Toole* and *Rodriguez* establish that a defendant is not simply entitled to information related to a search warrant affidavit because it appears relevant. Rather, defendant must meet a burden of a showing less substantial than that in *Franks* before discovery will be allowed. Exactly what a defendant must show to meet this burden is not entirely clear from the two cases. In *Rodriguez*, the court held that defendant must make some showing that the affiant made a deliberate falsehood in the affidavit. This requirement is in line with the showing required under *Franks*. In *O'Toole*, however, we appeared to state that a defendant could meet the burden by arguing that a preliminary showing would be impossible without the information. An arguable interpretation of this statement is that a defendant need not allege a falsehood in the affidavit, so long as he alleges that it would be impossible to make a preliminary determination of the affiant's veracity without the information. We find, however, that this interpretation is inconsistent with the basic presumption of validity attached to the warrant affidavit. Therefore, we find defendant must offer some showing that there is reason to believe the affiant made a deliberate or reckless falsehood.

■ It is clear in this case that defendant has failed to meet her burden, however insubstantial, to compel disclosure of the information she requested. Defendant made no argument in support of her subpoena that the affiant had made false statements in the affidavit complaint. Defendant argued only that it would be extremely difficult to determine the veracity of the police officer's affidavit. She contends the information regarding the case numbers of the three other cases may determine the truthfulness of the complaint. She made no claim that she had any reason to believe the officer made false statements. At this stage, defendant's arguments suggest she was using the discovery process to engage in a fishing expedition. As stated in *O'Toole*, attempts to elicit further information not contained in the affidavit without an initial showing of necessity amounts to a fishing expedition by the defendant and opens the door to potential abuse. *O'Toole*, 164 Ill. App. 3d at 28.

■ ■ Defendant next argues that the court erred in denying her motion for a *Franks* hearing. As already stated, to obtain a *Franks* hearing, defendant must make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit. Furthermore, defendant must show that the allegedly false statement is necessary to the finding of probable cause. (*Franks*, 438 U.S. at 155-56, 57 L. Ed. 2d at 672, 98 S. Ct. at 2676; see also *People v.*

*Lucente* (1987), 116 Ill. 2d 133.) In *Lucente* the court explained that this standard was one that lies somewhere between mere denials on the one hand and proof by a preponderance of the evidence on the other. "Put another way, the preliminary burden must be sufficiently rigorous to preclude automatic hearings in every case, but not so onerous as to be unachievable." (*Lucente*, 116 Ill. 2d at 152.) The determination as to whether there has been a substantial showing sufficient to warrant a hearing must be made by the trial judge, and will, to a degree, be the final decision. *Lucente*, 116 Ill. 2d 133.

Turning to defendant's motion, defendant charged that the alleged events stated in the officer's complaint did not occur at the date and place stated by the officer's informant. In his affidavit, Agent Bridges stated that the informant had been at defendant's house and sampled cocaine within the last 48 hours. Exactly when this 48-hour period began is not certain. The affidavit was signed and sworn on June 2, but the time that it was signed and sworn is not specified. The warrant was issued at 4:05 p.m. June 2. Defendant also charges that the officer was not present at the house at the time alleged in the affidavit. Bridges stated that the house had been under surveillance since the time the informant was there and the only person to enter or leave was defendant.

In support of her motion, defendant attached affidavits from herself, James Mohnke and Marina Giraldo. Defendant stated in her affidavit that, on May 31, the only individuals at her home were employees of a moving company who were moving her furniture from 12 to 6 p.m., her four children, her boyfriend, Diego Meza, and her babysitter, Marina Giraldo. On June 1, no one other than these people were at the house. The moving company employees were at the house from 12 to 8 p.m. On June 2, defendant left the house at 7:45 a.m. with her children and her baby-sitter and drove away in her automobile, returning with the same occupants at 9 a.m. The only person present when she returned was Diego Meza. At 10:30 a.m., defendant left the residence by herself in her car. She returned at 12:30 p.m. and remained at the house until 2 p.m. The only people at the house until 4:30 p.m., when she left the house again, were her children and her housekeeper. (Defendant does not explain the apparent discrepancy between her statement that she remained at the house until 2 p.m. and her next statement that she left the house at 4:30 p.m.) Defendant returned to the house at 5:30 p.m. At no time on June 2, 1988, did defendant show anyone cocaine in her residence.

Marina Giraldo's affidavit essentially corroborated defendant's. She stated she was present at the house on May 31 and June 1 and

saw no one except the same people stated in defendant's affidavit. On June 2, she left with defendant at 7:45 a.m. and returned at 9 a.m. Giraldo stayed at the house the rest of the day. Defendant left the house at 10:30 a.m. At 11:30 a.m., Diego Meza left the house. Also at 11:30 a.m., defendant returned. Defendant next left the house at about 12:30 p.m. and returned at 2 p.m. She left again at 4 p.m. and returned at 5:30 p.m. Giraldo stated that the residence consisted of a living room, dining area, kitchen and four bedrooms. She saw no individuals in the living room on June 2 other than those mentioned.

Mohnke stated that he was an employee of the moving company who moved furniture at defendant's residence on May 31 from 12 to 6 p.m. At the residence were defendant, defendant's four children, Diego Meza and defendant's housekeeper. There was also a person helping whose name was not known. On June 1, Mohnke returned to the house with a helper at 12 and worked until 8 p.m. At no time did he see any other individuals about the house, and at no time did he hear defendant discuss the sale of cocaine.

We find defendant's affidavits fail to establish a substantial preliminary showing under *Franks*. This case is unlike *Lucente*, cited by defendant, where the affidavits submitted by defendant established that defendant was not at his residence at the time the alleged transaction occurred. (*Lucente*, 116 Ill. 2d at 153.) Defendant's affidavit amounts to no more than a denial, and the other affidavits do not substantially establish that Agent Bridges made false statements in his affidavit.

The affidavits do not substantially demonstrate that Bridges falsely stated that an informant had sampled cocaine in the living room within 48 hours from the time he signed the affidavit. Mohnke's affidavit covered only from 12 to 6 p.m. May 31 and 12 to 8 p.m. June 1, thus leaving a vast time frame uncovered. Giraldo's affidavit does not substantially establish that, during the 48-hour period in question, she would have seen a person in defendant's living room discussing a purchase of cocaine. She stated she was at the residence on the days in question and that no one, other than defendant, defendant's children, and Diego Meza, was in the living room on June 2, but she did not state that she was in the living room at all times or that defendant was in her sight at all times.

Defendant's affidavits also fail to show substantially that Bridges' made a false statement when he stated that, from the time the informant left the house, no one except defendant left or entered the residence. Bridges' stated the informant was at the house within the last 48 hours from some point on June 2. The warrant was issued at

4:05 p.m. It is likely that Bridges completed the affidavit at some time just before 4:05 p.m. Thus, the 48-hour time frame could be 48 hours just prior to 4:05 p.m. Defendant's affidavits establish that, on June 2, Diego Meza left the house at 11:30 a.m. and the only person to enter or leave the house after him was defendant. Thus, if the informant entered the house after 11:30 a.m. when defendant was home for certain periods of time before 4:05 p.m., then Bridges' statement would not be false. Even assuming *arguendo* that this statement was false, this showing would not be enough to warrant a *Franks* hearing. Without this fact, the search warrant complaint still establishes probable cause in that it describes an informant's sampling of cocaine and describes the informant's reliability. See *Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317.

■ Next, we find no merit to defendant's contention that the trial court erred in admitting into evidence testimony of the purity of the cocaine seized at defendant's residence. Defendant argues that, because the statute under which she was charged with possession with intent to deliver, section 401(a)(2) of the Controlled Substances Act (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(a)(2)), does not require the illegal substance to have a certain purity level, the evidence of the purity is irrelevant. We disagree. Intent to deliver is necessarily proved by circumstantial evidence. (*People v. Friend* (1988), 177 Ill. App. 3d 1002, 1021.) Evidence which tends to show that an amount of a controlled substance would not be possessed for personal use, such as the amount and purity of the drug, is clearly relevant to a charge of possession with intent to deliver. *People v. Johnson* (1986), 143 Ill. App. 3d 122, 129.

■ We also find no merit to defendant's next contention that, during defendant's motion to suppress, the trial court erred in allowing the State to question defendant about the substance of the specific statement defendant sought to suppress. Defendant contends the contents of the statement were not relevant to the issue of whether defendant received her *Miranda* warnings or gave a voluntary statement. We need not decide whether this testimony was irrelevant because there is no evidence that defendant was prejudiced by this testimony. The trial court is presumed to recognize and disregard incompetent evidence presented to it. (*People v. Richardson* (1988), 123 Ill. 2d 322.) There is no evidence in the record that establishes that the trial judge's decision on the suppression issue was influenced by testimony of the defendant's statement.

■■ ■ Defendant also argues the trial court erred in denying her motion to suppress post-arrest statements where she was not ad-

vised of her *Miranda* rights. Defendant testified at the suppression hearing and at trial that the police did not advise her of her rights when they arrested her at her residence. Three police officers testified to the contrary. Defendant argues that the police officers' credibility is called into question because defendant later refused to sign a waiver of rights at the police station. A trial court's determination that a confession is voluntary will not be reversed unless it is contrary to the manifest weight of the evidence. (*People v. Terrell* (1989), 132 Ill. 2d 178, 198.) In this case, the issue comes down to one of whom to believe. Generally, a court of review should not encroach upon the trier of fact's function of weighing credibility. (*People v. Morgan* (1986), 112 Ill. 2d 111, 136.) Here, the trial court's determination that defendant's statement was voluntary is not contrary to the manifest weight of the evidence. The fact that defendant later decided not to sign a waiver form does not cast sufficient doubt on the officers' testimony that she had earlier stated she understood her rights and voluntarily spoke to the officers. See *People v. Jennings* (1986), 142 Ill. App. 3d 1014, 1031.

 Defendant next contends she was denied a constitutional right to a fair trial when the trial court precluded her from further cross-examination of a witness. Cross-examination of witnesses is a matter of right; however, the latitude to be afforded in such examination is largely within the discretion of the trial judge, and, absent a clear abuse of discretion resulting in manifest prejudice to defendant, the trial court's determination will not be disturbed on appeal. (*People v. DeSavieu* (1983), 120 Ill. App. 3d 420, 428.) As will be shown below, the instance in question here does not show an abuse of discretion or prejudice to defendant.

Defendant was precluded from a second re-cross-examination of Agent Bridges in regard to his report, known as a DEA Form 6. On cross-examination, defendant asked Bridges about a section of the report entitled "details" which included six numbered paragraphs. This section, Bridges testified, took up approximately half of a page and was followed by a page and a quarter description of what was taken and how it was disposed. On redirect examination, the officer testified that the report stated defendant was read her constitutional rights and described the questions asked of her and her responses. On re-cross-examination, Bridges testified that the only details under the "details" heading included defendant's statement and the fact she was advised of her rights. On further redirect, Bridges testified there were numerous details in the report in regard to where the police were, what they found, where they found it, and who was present. On

further re-cross, defendant asked Bridges to what details he was referring. At this point, the court stopped the defendant from further questioning, stating that the witness had been examined back and forth and back and forth.

 We find the trial court's ruling is entirely appropriate. There is nothing in the record to indicate that defendant was precluded from obtaining information that had not already been thoroughly covered by both counsel. Moreover, defendant does not explain how this instance could have resulted in any prejudice. Defendant refers to the significance of her post-arrest statement in arguing this point. Yet, there is no reasonable inference that defendant's attempt at further re-cross-examination would have shed any more light on the circumstances surrounding defendant's post-arrest statement.

 Next, we address defendant's contention that the State failed to prove her guilty beyond a reasonable doubt. A defendant's conviction will not be reversed on appeal unless it is concluded that, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could not have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins* (1985), 106 Ill. 2d 237, 261.

 Defendant contends the State failed to prove beyond a reasonable doubt that she possessed cocaine with an intent to deliver because there was evidence that she shared her bedroom in which the cocaine was found with her boyfriend, Diego Meza. To prove possession, the State must prove beyond a reasonable doubt that defendant had knowledge of the presence of the cocaine and that it was within defendant's immediate and exclusive control. (*People v. Rush-Bey* (1987), 152 Ill. App. 3d 17, 22.) Proof that defendant controlled the premises where the drugs were found gives rise to an inference of knowledge and possession. (*Rush-Bey*, 152 Ill. App. 3d at 22.) In this case, there is proof that the cocaine was found in defendant's residence in her bedroom closet. Moreover, defendant's statements after her arrest that there was nothing else in the house and that she only bought prepackaged kilos clearly defeats her contention that she had no knowledge of the drugs found in her closet. This evidence, along with the evidence concerning the amount and purity of the cocaine, and the $42,500 cash found in the closet, provides sufficient evidence to find defendant guilty of possession with intent to deliver.

 Finally, defendant contends her sentence of 15 years' imprisonment was an abuse of discretion. A defendant's sentence will not be altered on review unless it is shown that the trial court abused its discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153.) We conclude

that the record does not show an abuse of discretion in this case.

Defendant contends the court failed to consider the following mitigating factors: (1) defendant's lack of criminal history; (2) defendant's stated remorse; (3) the letters from defendant and defendant's daughter; (4) defendant's prior employment background; (5) defendant's cooperation with DEA agents and her participation in GED classes; (6) defendant's potential for rehabilitation; and (7) defendant's testimony and letter stating that the drugs were brought into her home by her boyfriend. Defendant acknowledged that the court considered defendant's family as a mitigating factor.

■■ The record does not demonstrate that the trial court failed to consider these factors. Where mitigation evidence is before the court, it is assumed the sentencing judge considered the evidence, absent some indication, other than the sentence imposed, to the contrary. (*People v. Foreman* (1987), 153 Ill. App. 3d 346, 358.) Defense counsel referred to the mitigating factors in argument. The trial court stated that it had read the presentencing report and heard the arguments of counsel. There is no evidence that the mitigating factors were not considered.

■■ ■ Defendant's sentence of 15 years' imprisonment is not an abuse of discretion. At the time of defendant's arrest and conviction, one convicted of possession with intent to deliver more than 15 grams of cocaine was sentenced as a Class X felon (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(a)), subject to no less than six years and no more than 30 years' imprisonment (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(3)). While the defendant is correct that mitigating factors were present in this case, it is also true that defendant was convicted of a serious offense. The trial court took note of the quantity of cocaine seized, 946 grams, and the community's concern over the distribution and sale of cocaine. In drug-related cases, the amount of a controlled substance is relevant to the determination of the seriousness of the offense. (*Foreman*, 153 Ill. App. 3d at 358.) As was stated in *People v. Foreman*:

> "The objective of restoring a defendant to useful citizenship is to be accorded no greater consideration than that which establishes the seriousness of the offense, and the prime responsibility for striking the proper balance between these two factors rests with the trial court." (*Foreman*, 153 Ill. App. 3d at 358.)

We find the trial court's decision reflects a fair consideration of the mitigating factors and the seriousness of the offense. See also *People v. Edwards* (1984), 128 Ill. App. 3d 993 (12-year sentence for unlawful possession with intent to deliver where defendant had no criminal rec-

ord, was self-employed, and supported his family not an abuse of discretion); *People v. Atencia* (1983), 113 Ill. App. 3d 247 (18-year sentence for possession with intent to deliver cocaine not improper even though defendant had no prior convictions and had a wife and three children).

 Nor do we find defendant was prejudiced by the State's argument to the court in which the State referred to the newer sentencing guidelines effective July 1, 1988, under section 401.1 of the Illinois Controlled Substances Act, which stated that one convicted of possession with intent to deliver more than 900 grams shall be sentenced to no less than 15 years and no more than 60 years (Ill. Rev. Stat. 1987, ch. 56½, par. 1401.1(3)). In referring to this statute, the State made clear that it was not suggesting that defendant should be sentenced under these new guidelines. Rather, it noted the statute as evidence that the legislature considered this a serious offense. Given that defendant's sentence was 15 years less than the maximum of 30 years under the proper statute in her case, there is no reason to believe the trial court was improperly influenced by the State's reference to the enhanced sentencing guidelines for drug offenses.

The judgment of the circuit court is affirmed.

Affirmed.

UNVERZAGT, P.J., and McLAREN, J., concur.