THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIE JOHNSON, Defendant-Appellant.

Second District No. 2—89—0223

Opinion filed December 18, 1990.

G. Joseph Weller and David W. Devinger, both of State Appellate Defender's Office, of Elgin, for appellant.

Paul A. Logli, State's Attorney, of Rockford (William L. Browers and David A. Bernhard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE INGLIS delivered the opinion of the court:

Defendant, Willie Johnson, appeals the seven-year sentence of incarceration the trial court imposed upon him after he pleaded guilty to and the court convicted him of the offense of second degree murder (Ill. Rev. Stat. 1989, ch. 38, par. 9—2(a)(2)). His sole contention on appeal is that the trial court abused its discretion in imposing the sentence because the court improperly considered, as aggravating factors, that defendant used a weapon in committing the crime and caused a death.

On December 12, 1988, defendant, whom the State originally charged with first degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)(1)), pleaded guilty to second degree murder. As part of the plea negotiations, the parties agreed that the trial court itself would determine the appropriate sentence. After hearing the factual basis for the plea, which we summarize below, the court accepted the plea of guilty, convicted defendant of second degree murder and, after conducting a sentencing hearing, imposed the seven-year period of imprisonment. The court then denied defendant's motion to reconsider the sentence, and defendant filed a timely notice of appeal.

The incident that led to defendant's conviction and sentence took place in Rockford, Illinois, on August 13, 1988. That evening, David Berry, the murder victim, and his friends, Lavertis Coble and Michael Anderson, were gathered with other friends in a parking lot in front of a housing project. Defendant and two other individuals joined the group; an argument ensued among various individuals but eventually subsided. Shortly thereafter, Lee Lilly and Brian Simmons approached the gathering; Lilly said something to Anderson, and then both Lilly and Simmons punched Anderson in the face.

At that point various individuals commenced fighting while others ran. Lavertis Coble retrieved a .25 caliber handgun that belonged to David Berry, and Coble's friend, Chuckie Owens, began to chase defendant with a club. Defendant pulled out a .38 caliber revolver and

pointed it at Owens. Both defendant and Coble then fired their handguns. One of the bullets from defendant's revolver struck David Berry, who was in close proximity to Coble, in the head and caused Berry's death, while one of the slugs from Coble's gun injured Lee Lilly.

According to the statement defendant gave to the police three days later, defendant believed Chuckie Owens was chasing him with a gun. When defendant heard gunshots and saw Coble possessing a gun, defendant shot in the direction of Coble to scare him.

Inasmuch as the gravamen of defendant's appellate argument is that the trial court considered two improper factors in aggravation, we deem it necessary to set forth a summary of the court's remarks during the sentencing hearing that took place on February 6, 1989, as well as the hearing held on February 10, 1989, to adjudicate defendant's motion to reconsider his sentence.

At the outset of the February 6 hearing, the court determined, over defendant's objection, that the State could present a "victim impact statement" (see generally *People v. Miller* (1989), 193 Ill. App. 3d 918, 932-38; *People v. Scott* (1989), 180 Ill. App. 3d 418, 424-25) that David Berry's mother prepared. In reaching its decision to consider the impact statement, the court recognized that "in a homicide case where death is always a factor," the aggravating factor that defendant's conduct caused serious harm to another (Ill. Rev. Stat., 1988 Supp., ch. 38, par. 1005—5—3.2(a)(1)) is "pretty much encompassed in the offense itself." However, the court noted that it was appropriate to consider the effect the present offense had on the victim's family.

After hearing the testimony defendant presented in his behalf and the arguments of counsel, the court concluded that a sentence of probation would deprecate the seriousness of the offense and would be inconsistent with the ends of justice (Ill. Rev. Stat., 1988 Supp., ch. 38, par. 1005—6—1(a)(2)). The court stressed that a sentence in the penitentiary was necessary to deter others from committing the same crime (Ill. Rev. Stat., 1988 Supp., ch. 38, par. 1005—5—3.2(a)(7)) and noted that defendant had a history of prior delinquency (Ill. Rev. Stat., 1988 Supp., ch. 38, par. 1005—5—3.2(a)(3)). The presentence report reflects that defendant was adjudged a juvenile delinquent three times between 1983 and 1987 for committing the offenses of disorderly conduct, theft, and criminal damage to property.

The court mentioned that defendant did not intend to commit a murder but rather "got caught up in the situation" and that there was a big difference between the current offense and an intentional

murder which the perpetrator facilitated by using a gun. Nonetheless, the court commented twice that defendant had carried a weapon, and the court placed significance on this fact. Emphasizing that defendant did not take advantage of prior opportunities to rehabilitate himself, the court determined that the minimum sentence of four years' imprisonment was inappropriate in light of defendant's prior record. The court then remarked that the offense in question involved a death and that a four-year term of incarceration was the minimum sentence the court could impose. The court then sentenced defendant to seven years' imprisonment in the Department of Corrections.

In considering and denying defendant's motion for reconsideration four days later, the court correctly pointed out that the range of imprisonment for second degree murder, which is a Class 1 felony (Ill. Rev. Stat. 1989, ch. 38, par. 9—2(d)), is a determinate term of not less than 4 and not more than 15 years (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(4)). Observing that a defendant who did not have any prior record might receive a minimum sentence of incarceration, the court stressed that Willie Johnson did have a previous record. Although the trial judge stated that, in fixing an appropriate sentence, he had taken into consideration that defendant did not plan or contemplate the commission of this offense, the judge also remarked he had weighed the fact that defendant had carried a weapon and allowed himself to get involved in the current situation. Too, the court mentioned that it had evaluated the factors in mitigation and aggravation (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.1; Ill. Rev. Stat., 1988 Supp., ch. 38, par. 1005—5—3.2) and, again, placed special emphasis on the need to deter others from committing a similar crime. Lastly, the court remarked that it had considered the seriousness of the offense, the taking of a life.

Defendant's contention that the court abused its discretion in imposing the seven-year sentence of imprisonment he received is premised primarily on the argument that the court below improperly considered two factors in aggravation—that defendant caused the death of the victim, David Berry, and employed a gun in committing the second degree murder. In this regard, defendant's argument is twofold. First, relying principally upon *People v. Saldivar* (1986), 113 Ill. 2d 256, and *People v. Martin* (1988), 119 Ill. 2d 453, defendant maintains that, in applying in the context of a second degree murder the statutory aggravating factor that defendant's conduct caused serious harm (Ill. Rev. Stat., 1988 Supp., ch. 38, par. 1005—5—3.2(a)(1)), the trial court may not consider the death of the victim, because death is implicit in the offense itself. Second, placing sole reliance on *People v.*

*Alejos* (1983), 97 Ill. 2d 502, defendant asserts that the sentencing court may not consider, as a factor in aggravation in a prosecution for second degree murder, that defendant employed a weapon in perpetrating the crime. In a more general sense, defendant also argues that, absent the improper aggravating factors and based upon his potential for rehabilitation, his unfortunate background or poor social environment and his remorse for the death of Mr. Berry, he is entitled to receive a sentence not in excess of four years' imprisonment. Accordingly, he asks this court to exercise its authority pursuant to Supreme Court Rule 615(b)(4) (107 Ill. 2d R. 615(b)(4)) and reduce his sentence or, in the alternative, to remand the cause to the trial court for a new sentencing hearing.

As defendant correctly reminds us, the current second degree murder statute is essentially the same as the former voluntary manslaughter law for the purpose of determining whether the trial court properly considered the two aggravating factors in question. (Compare Ill. Rev. Stat. 1989, ch. 38, par. 9—2, with Ill. Rev. Stat. 1985, ch. 38, par. 9—2; see also *People v. Shumpert* (1989), 126 Ill. 2d 344, 351-52; *People v. Moore* (1987), 159 Ill. App. 3d 1070, 1074 n.2.) Therefore, jurisprudence under the former statute is relevant and helpful to our consideration and resolution of the same legal issue in the context of the second degree murder enactment.

■ In addressing the argument that the court below improperly considered the death of David Berry as a factor in aggravation pursuant to section 5—5—3.2(a)(1) of the Unified Code of Corrections (Code) (Ill. Rev. Stat., 1988 Supp., ch. 38, par. 1005—5—3.2(a)(1)), we begin our analysis with *People v. Saldivar*. In *Saldivar*, the trial court sentenced the defendant to a seven-year period of imprisonment for the offense of voluntary manslaughter. During argument at the sentencing hearing, the prosecutor had stressed that Saldivar had killed the victim; the trial court determined that the primary statutory factor in aggravation was the terrible harm the defendant caused the victim and then remarked that the victim was dead. In concluding that the trial court in *Saldivar* erred in considering this aggravating factor, our supreme court explained that it was impermissible for the trial court to impose a more severe sentence on the ground the defendant caused the victim serious bodily harm, namely, death, because death is inherent in the offense of voluntary manslaughter. (*Saldivar*, 113 Ill. 2d at 271-72.) The supreme court further elaborated, however, that, in applying the aggravating factor that the defendant caused the victim serious harm, the sentencing court could consider "the force employed and the physical manner in which the

victim's death was brought about," which comprehends the degree or gravity of the defendant's conduct rather than the end result, that is, the victim's demise. 113 Ill. 2d at 271-72.

Our supreme court reached the same result in *People v. Martin* (1988), 119 Ill. 2d 453, which involved a conviction of and maximum five-year sentence of imprisonment for involuntary manslaughter resulting from the unintentional discharge of a single bullet from a gun. In *Martin*, before imposing sentence, the trial judge expressly commented that he had considered as an aggravating factor that the defendant had inflicted serious bodily harm that resulted in a death. 119 Ill. 2d at 461.

The seminal *Saldivar* case has spawned numerous appellate court decisions which have applied the teachings of *Saldivar* in varying factual settings involving challenges to sentences on the ground the courts considered, as aggravating factors, an element that was inherent in the particular offense. Compare *People v. Colclasure* (1990), 200 Ill. App. 3d 1038, 1046 (no error where the court recognized death was an element implicit in voluntary manslaughter, did not give the death undue influence, and emphasized the manner in which the death was inflicted); *People v. Verser* (1990), 200 Ill. App. 3d 613, 620-21 (no error where the court merely mentioned that the victim had died and considered the circumstances surrounding the murder, or, at most, harmless error where the court considered other aggravating factors and placed insignificant emphasis on the death); and *People v. Rose* (1989), 191 Ill. App. 3d 1083, 1097-98 (no error in imposing sentence for voluntary manslaughter where the court only mentioned the defendant had killed without legal justification and did not state the sentence was based on the unjustified killing) with *People v. Smith* (1990), 195 Ill. App. 3d 878, 884 (error where the prosecutor argued, over defense counsel's objection, that the court should consider the victim's death as an aggravating factor in a voluntary manslaughter prosecution, and the trial court's remarks emphasized that the victim's death was an aggravating factor); *People v. Miller* (1989), 193 Ill. App. 3d 918, 931-32 (error to rely upon the victim's death to impose consecutive sentences for voluntary manslaughter); and *People v. Stoneking* (1990), 193 Ill. App. 3d 98, 100 (error in a murder prosecution where the trial court noted, without elaboration, that the defendant's act caused serious injury, and it was unclear whether the court considered the degree of harm or the gravity of the accused's conduct when it found the aggravating factor to be present).

■ When we apply *Saldivar* and its progeny to the particular facts of this cause, we must conclude that the trial court did not con-

sider David Berry's death as an aggravating factor in conjunction with section 5—5—3.2(a)(1) of the Code. Various important factors, which we discuss below, have influenced our decision and necessitated this conclusion.

After making the threshold determination that a sentence of imprisonment was necessary because probation would deprecate the seriousness of the offense and be inconsistent with the ends of justice, the court then expressly discussed two factors in aggravation it found applicable: (1) a term of imprisonment was necessary to deter others from committing the same crime (Ill. Rev. Stat., 1988 Supp., ch. 38, par. 1005—5—3.2(a)(7)), which is a proper aggravating factor in this context (*Smith*, 195 Ill. App. 3d at 883-84; *People v. Hall* (1987), 159 Ill. App. 3d 1021, 1034); and (2) defendant's record of prior juvenile delinquency (Ill. Rev. Stat., 1988 Supp., ch. 38, par. 1005—5—3.2(a)(3)). The court stressed, during both the original sentencing hearing and the hearing concerning the motion to reconsider the sentence, that the minimum four-year sentence was inappropriate on account of defendant's prior juvenile delinquency adjudications, of which the court was cognizant.

■ We deem it particularly significant that, unlike these two explicit references to and consideration of two proper aggravating factors, the court's mere mention during the sentencing hearing that the offense involved a death was not associated with a reference to the potentially improper aggravating factor involving the causation of serious harm. We believe the same observation applies to the court's isolated statement during the reconsideration hearing that it had considered originally the seriousness of the offense, that is, the taking of a life. In our view, the court's failure to mention or discuss that the death was a factor in aggravation under section 5—5—3.2(a)(1) of the Code is not surprising. In conjunction with the earlier discussion concerning the admission of the victim impact statement, the trial judge recognized and stated expressly that death is always involved in a homicide and that the aggravating factor concerning the causation of serious harm is encompassed in the offense of voluntary manslaughter itself. (See *Colclasure*, 200 Ill. App. 3d at 1046.) Furthermore, unlike the situation present in *Smith* (195 Ill. App. 3d at 884), the prosecutor here did *not* argue that the court should consider the victim's death as an aggravating factor and thus did not plant that seed in the trial court's mind where, it appears, it would not have had fertile ground in any event.

Based upon our thorough review of the totality of the trial judge's comments during the sentencing hearings, it is abundantly clear that

the court's two brief references to the victim's death were no more than the court's acknowledgment that a serious offense involving a death had taken place (see *Hall*, 159 Ill. App. 3d at 1034-35), for which the court concluded the minimum sentence was inappropriate given defendant's history of prior juvenile delinquency. Such passing references to the victim's death did not place undue emphasis on his demise or emphasize the end result of the crime and certainly did not establish that the court considered his death as an aggravating factor under section 5—5—3.2(a)(1) of the Code. See *Colclasure*, 200 Ill. App. 3d at 1046; *Verser*, 200 Ill. App. 3d at 620-21; *Rose*, 191 Ill. App. 3d at 1098.

We turn next to the second prong of defendant's twofold argument: that *People v. Alejos* (1983), 97 Ill. 2d 502, precluded the trial court from considering, as part of its sentencing decision, that defendant used a weapon in committing voluntary manslaughter. For the reasons that follow, we disagree.

In *Alejos*, the trial court convicted the defendant of voluntary manslaughter and armed violence based on voluntary manslaughter and imposed concurrent seven-year terms of imprisonment. The supreme court in *Alejos* concluded that an armed violence conviction could not be predicated on voluntary manslaughter and reversed the improper conviction. (*Alejos*, 97 Ill. 2d at 513.) The court then went on to consider whether the cause should be remanded for resentencing on the voluntary manslaughter conviction "to guard against the possibility that the presence of the improper armed-violence conviction *** might have influenced the trial court's sentence on the manslaughter charge." (97 Ill. 2d at 513.) Our supreme court determined that the cause had to be remanded for resentencing for voluntary manslaughter because the defendant's use of a gun influenced the trial court in deciding the length of the sentence and because the lower court incorrectly concluded, in the words of the supreme court, that the use of the weapon "merited enhanced criminal punishment" in that case. (97 Ill. 2d at 514.) Rather than interpret *Alejos* broadly, as defendant suggests, to preclude a trial court from considering that defendant used a gun in perpetrating the crime of voluntary manslaughter, we elect to view *Alejos* narrowly and in its proper perspective, that is, circumscribed by its own factual underpinnings.

As we stated above, the supreme court's concern in *Alejos* was whether the improper armed violence conviction impermissibly affected the sentence the trial court imposed for the voluntary manslaughter. The *Alejos* opinion aptly points out that the use of a dangerous weapon, such as a revolver, is an essential element of armed

violence and the weapon is deemed an aggravating factor "which enhances the severity of the underlying felony and upgrades the punishment available for it to Class X." (97 Ill. 2d at 508; see Ill. Rev. Stat. 1989, ch. 38, pars. 33A–1, 33A–2, 33A–3.) Thus, in *Alejos*, the very factor which enhanced the underlying voluntary manslaughter in the armed violence context—the use of a gun—also assumed primary importance in the sentence for voluntary manslaughter itself. In light of the trial court's sentencing remarks and the identical seven-year sentences imposed, the supreme court concluded that the presence of the inappropriate armed violence conviction affected the length of the voluntary manslaughter sentence. (97 Ill. 2d at 513-14.) It was in this singular context that the *Alejos* court made its sentencing comments concerning the improper consideration of the use of the gun. *Cf. Smith*, 195 Ill. App. 3d at 883-84; *Moore*, 159 Ill. App. 3d at 1073-74.

■ At the risk of stating the obvious, the crime of second degree murder can be committed in different ways involving varying degrees of brutality. (Compare *Moore*, 159 Ill. App. 3d at 1071 (a prolonged beating inflicted with fists, a hammer, a knife, a stick, and a table leg with a nail protruding from its base) with *People v. Evans* (1981), 87 Ill. 2d 77, 87 (a stray bullet killed a bystander).) In our view, there is nothing in the *Alejos* opinion that would prevent a trial court from considering, when fixing an appropriate sentence for second degree murder, the defendant's use of a handgun, whether the gun fired a stray bullet or was used to bludgeon a person to death. Also, to preclude the court from considering this factor flies in the face of the supreme court's pronouncement in *Saldivar* that the sentencing judge may consider as part of his or her sentencing decision the force the defendant employed and the physical manner in which the victim's death was occasioned. 113 Ill. 2d at 271.

■ We next address defendant's more general argument that he is entitled to a reduced sentence of four years' imprisonment based on his potential for rehabilitation, his unfortunate family background and poor social environment, and the remorse he demonstrated for the death he caused. It is well established in this State that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Ill. Const. 1970, art. I, §11.) Rehabilitation is an objective of the sentence and a factor which the trial court must consider. (*People v. Haepp* (1990), 194 Ill. App. 3d 207, 210.) However, it is equally manifest that the sentencing tribunal need not accord greater weight to the goal of restoring the defendant to useful citizenship than it places on the seriousness of the offense; rather, the responsibility for

striking the appropriate balance between these two concerns reposes in the trial court. (*People v. Torres* (1990), 200 Ill. App. 3d 253, 267.) Of course, we will not alter the sentencing judge's decision unless it is the result of an abuse of the court's sentencing discretion. *People v. Perruquet* (1977), 68 Ill. 2d 149, 153; *Torres*, 200 Ill. App. 3d at 266.

■■ We discern no abuse of discretion in the trial court's sentencing decision. The record reflects that the court below considered defendant's rehabilitative potential and concluded, based on defendant's history of prior juvenile delinquency, that defendant had not taken advantage of previous opportunities to rehabilitate himself. The court was also cognizant of the factors defendant emphasizes in mitigation, and there is nothing in the record to suggest the court did not consider them. (*Torres*, 200 Ill. App. 3d at 267.) Given the constellation of factors present in this cause, we cannot conclude that the court abused its discretion in imposing a sentence that was three years above the minimum and eight years below the maximum. See *Scott*, 180 Ill. App. 3d at 425.

For these reasons, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

BOWMAN and NICKELS, JJ., concur.