THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDWARD TAYLOR, Defendant-Appellant.

First District (3rd Division)    No. 1—92—0721

Opinion filed February 1, 1995.

Rita A. Fry, Public Defender, of Chicago (Frederick Weil, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Janet Powers Doyle, and Katherine S.W. Schweit, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CERDA delivered the opinion of the court:

After a jury trial, defendant, Edward Taylor, was convicted of possession of a controlled substance with the intent to deliver (Ill. Rev. Stat. 1989, ch. 56$^1$/$_2$, par. 1401 (now 720 ILCS 570/401 (West 1992)) and sentenced to four years' imprisonment. On appeal, defendant asserts that (1) the trial court erred in denying his motion to disclose the informant's identity and hold a *Franks* hearing; (2) the trial court erred in denying his motion to suppress statements on the ground that they were physically coerced; (3) the trial court's evidentiary errors denied him a fair trial; (4) the State's misconduct denied him a fair trial; and (5) the State failed to prove him guilty beyond a reasonable doubt. Based on the following reasons, we affirm.

During the hearing on defendant's motion to suppress, Chicago police Sergeant Ernest Brown testified that he and three other police officers executed a narcotics search warrant on June 2, 1990, at 6530 S. Martin Luther King Drive, apartment 3A, in Chicago. When the police officers forcibly entered the apartment, defendant was the only

person present. He was standing in a bedroom in front of an open window whose screen had been removed. Defendant, who was about 20 to 25 feet from the front door, identified himself and stated that he lived in the apartment.

Brown further testified that Sergeant Walter Green came into the apartment and identified defendant as the person he had seen throw two clear plastic bags containing a white powder out the window. After defendant was arrested and advised of his *Miranda* rights, the apartment was searched pursuant to the warrant.

Near the end of the search, the telephone rang and Brown answered it. According to Brown, a black women identified herself as defendant's girl friend and said that she would come or send someone to watch the apartment. After the phone call, defendant made a statement without being asked, threatened or struck. Officers Green, Baker, and Bowers were also present.

Defendant was then taken to the police station and processed. Defendant did not complain of an ear injury, and Brown denied ever striking defendant.

Sergeant Green testified that he went to the back of 6530 S. Martin Luther King Drive while other police officers went to the front. He saw defendant lean out a third-floor window and drop two plastic bags containing a white power. After communicating with the other police officers over his radio, Green went into the apartment and identified defendant as the person he saw drop the bags. Defendant was then arrested and advised of his *Miranda* rights.

According to Green, two handguns, one rifle, a scale, narcotics paraphernalia, and a brass key ring defendant identified as his own were found during the search of the apartment. Defendant was allowed to get dressed into pants, a jacket, shoes, and a shirt from undershorts and a T-shirt.

When the telephone rang, Brown answered it. After the phone call, defendant said that all the guns and narcotics were his and not his girl friend's. According to Green, defendant was not being questioned at the time and was never struck in his presence.

Defendant then testified that he lived at 6036 S. Wood Street in Chicago. On June 2, 1990, he had been playing softball in Washington Park with his friend, Marcus Gardner. After the game, the two men went to 6530 S. Martin Luther King Drive, where Gardner's cousin, Emily Easley, lived. Defendant had been in the apartment before. Defendant and Gardner were watching a Cubs game on T.V. when Gardner went out to buy a six-pack of beer. Five minutes later, the police arrived.

According to defendant, he was standing three to four feet from

the door when the police broke it down. After the police entered, Brown slammed defendant's head against the wall, hit him in the left ear and eye, and handcuffed him. When Green came into the apartment, Brown was hitting him as he sat in a chair.

Defendant further testified that he told the police officers that his name is Eddie, not Tyce. He denied that the officers ever asked him for identification or his address. Regarding the telephone call, defendant stated that Brown answered the phone and asked, "Who is it? Who is it? She ain't here," and hung up. Defendant denied that he said anything after the phone call. On July 19, 1990, after his arrest, defendant went to the University of Illinois Hospital because of an ear injury.

The trial court denied defendant's motion to suppress his statement because it was not the product of coercion. The trial court ruled that the statement was given after defendant was advised of his *Miranda* rights and not prompted by any police questioning. In its ruling, the trial court stated that the witnesses' credibility had been weighed and all the testimony was considered.

Next, there were hearings on defendant's motions to quash the search warrant, for a hearing pursuant to *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, and for disclosure of a confidential informant used by the police. The trial court denied the motion to disclose the confidential informant because there was no evidence that the informant was involved in the transaction in any way. The trial court then denied defendant's motion for a *Franks* hearing, finding that defendant had not made a preliminary showing that the facts in the officer's search warrant affidavit were false or in conscious disregard of the truth. The trial court also denied defendant's motion *in limine* to bar admission of drug paraphernalia, guns, and other drug sellers' tools of the trade on the basis that the items were probative of whether defendant possessed the narcotics with the intent to deliver.

At trial, Sergeant Green testified to essentially the same facts as he had during the motion to suppress. In addition, he stated that the items seized from the apartment were two guns, a rifle, a portable telephone, a seal-a-meal, a scale, a grinder, a spoon, an ammunition clip, a police scanner, a bottle labeled "Mannitol," a front door key on a brass key ring, and $414 in cash. Green also stated that defendant was dressed in undershorts and socks when the officers arrived at the apartment.

After Green testified that a search warrant data form was in the police file, the defense counsel asked that his testimony be stricken as a result of a discovery violation regarding the report. Previously,

the assistant State's Attorney had stated in court that the report did not exist. The trial court directed the assistant State's Attorney to get the form, but did not strike Green's testimony.

Next, Sergeant Brown testified essentially as he had during the suppression hearing and in accord with Green's testimony. In addition, Brown testified that 85% to 90% of his narcotics arrests involved cocaine. In his experience, cocaine is usually packaged in clear plastic bags, which are prepared using seal-a-meals. In the execution of search warrants, Brown had recovered weapons 75% to 80% of the time, mobile phones 40% to 50% of the time, police scanners 60% to 70% of the time, and scales 80% of the time. Brown also testified that nine grams of cocaine had a street value of approximately $1,300.

Cotelia Fulcher, a criminalist in the Chicago police department, testified that she analyzed the confiscated powder, which weighed 9.27 grams and tested positive for the presence of cocaine.

After defendant's motion for a directed finding was denied, Dr. Karen Gibson, an ear, nose, and throat specialist at the University of Illinois Hospital, testified that she examined defendant on July 19, 1990. He had a perforated left eardrum that was likely the result of a blunt trauma such as a slap to the outer ear. Defendant had told her that the injury was caused by a slap or a knock to the head. Dr. Gibson could not determine how long the injury had been present, but defendant told her that he had suffered a hearing loss for about five weeks. Dr. Gibson determined that no infection was present.

Paulette Smith testified that she telephoned her friend, Emily Easley, at 4 p.m. on June 2, 1990. After a man answered, he told her to come to watch the apartment. Neither she nor the man identified themselves. When Smith arrived at the apartment, defendant and the police were present. Smith denied that she was defendant's girl friend. She stated that she had never seen him before and did not know him. According to Smith, Easley lived at 6530 S. King Drive, apartment 3A, by herself.

Emily Easley testified that she lived at 6530 S. King Drive, apartment 3A. On June 2, 1990, she was at work and did not make a telephone call to her apartment. When she arrived home that evening, she found her door torn down and the apartment torn up. According to Easley, the windows in her apartment slide to open and the screen had not been removed.

Easley further testified that she had expected her cousin, Marcus Gardner, who had a key to her apartment, to work on her car that day. Easley met defendant when he came to her apartment on May 31, 1990, with Gardner. That day, there was a dispute between Eas-

ley's boyfriend, Lester Owens, and defendant. Easley stated that defendant did not live in her apartment, did not keep clothes there, and had no key to the apartment. In addition, Easley denied that the mobile phone, scanner, seal-a-meal, and scale were in her apartment when she left for work on June 2, 1990.

Defendant then testified to essentially the same facts as he had during the motion to suppress. In addition, he stated that he had lived at 6036 S. Wood since 1968. On June 2, 1990, after his softball game at Washington Park, Gardner asked him to help put a transmission in Easley's car. Gardner opened the apartment door with a key. Defendant had been to Easley's apartment a couple of days earlier to work on the car with Gardner, but they were unable to start the job. While in the apartment, defendant had been involved in a dispute with a friend of Easley.

Shortly after Gardner had left to buy beer on June 2, 1990, defendant heard a noise at the door. Thinking that it was Gardner returning, he asked, "What's up Skull?" using Gardner's nickname. When someone yelled "police," defendant walked toward the door, but before he reached the door, it flew open and off its hinges. Defendant denied throwing cocaine out the window or seeing any of the State's exhibits in the apartment.

According to defendant, he was wearing baseball pants, cleats, socks, and a T-shirt, and had a gym bag containing his bat, glove, wallet, a sweater, and a shirt. He stated that he was carrying a large sum of money because the players would make sizable wagers at the softball games.

Defendant identified a photograph taken of him at Cook County jail when he was arrested. He said that his eye was swollen, the left side of his face was messed up, and he could not hear out of his left ear. Although defendant admitted that he signed his bond slip, which listed 6530 S. King Drive as his address, he stated that he neither wrote nor questioned the address.

At the conference on exhibits, the trial court allowed certain items to be sent back to the jury over defendant's objection. These included the handgun, the revolver, the rifle, the .25-caliber clip, the portable phone, the police scanner, the scale, the bottle with Mannitol, the phone battery, and the bond slip.

After deliberations, the jury returned a verdict of guilty. Subsequently, defendant was sentenced to four years' imprisonment.

On appeal, defendant asserts that the trial court erred in denying his motion to disclose the informant's identity, which alleged that nondisclosure resulted in defendant's inability to fully test the case against him and present an appropriate defense, possibly entrap-

ment or a frame-up. Defendant maintains that the informant, who provided the basis for the search warrant, was a material witness, had a high degree of involvement with the police, and had reason to fabricate an allegation against defendant if that informant was Easley's boyfriend.

Defendant's reliance on *People v. Raess* (1986), 146 Ill. App. 3d 384, 496 N.E.2d 1186, and *People v. Woods* (1990), 139 Ill. 2d 369, 565 N.E.2d 643, is misplaced. Both those cases involved informants who were actively involved in the crimes charged even though they were not present at the illegal drug transactions.

Defendant suggests that the trial court could have asked the State to reveal the informant's identity for an *in camera* determination of whether the defense's suspicion had merit. (*People v. Pearson* (1991), 210 Ill. App. 3d 1079, 569 N.E.2d 1334, 1337.) Defendant waived that argument because he never asked the trial court for such a determination.

■ We hold that the trial court properly denied defendant's motion to produce the informant. The purpose of the informer's privilege is to protect the public's interest in effective law enforcement. (*Roviaro v. United States* (1957), 353 U.S. 53, 59, 1 L. Ed. 2d 639, 644, 77 S. Ct. 623, 627.) It recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation. *Roviaro*, 353 U.S. at 59, 1 L. Ed. 2d at 644, 77 S. Ct. at 627.

The proper application of the informer's privilege involves balancing the public's interest in protecting the flow of information against the defendant's need for disclosure in order to prepare his defense. (*Roviaro*, 353 U.S. at 62, 1 L. Ed. 2d at 646, 77 S. Ct. at 628-29; *People v. Woods* (1990), 139 Ill. 2d 369, 378, 565 N.E.2d 643, 649.) The balancing depends on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors. *Roviaro*, 353 U.S. at 62, 1 L. Ed. 2d at 646, 77 S. Ct. at 629.

Numerous factors are considered by Illinois courts in determining whether the defendant's constitutional right to intelligently prepare a defense and to receive a fair trial necessitate disclosure of information regarding the informant's identity. (*Raess*, 146 Ill. App. 3d at 390.) Those factors include (1) whether the request for disclosure relates to the fundamental question of guilt or innocence rather than to the preliminary issue of probable cause; (2) whether the informant played an active role in the criminal act by participating in and/or witnessing the offense; (3) whether the informant assisted in setting

up its commission as opposed to being merely a tipster; and (4) whether it has been shown that the informant's life or safety would likely be jeopardized by disclosure of his identity. (*Raess*, 146 Ill. App. 3d at 390.) The burden of showing the need for disclosure is on the defendant. *People v. Stoica* (1987), 163 Ill. App. 3d 660, 666, 516 N.E.2d 909.

■ Although a defendant is entitled to disclosure of information regarding the informant for the purpose of preparing a defense founded on the entrapment theory (*Raess*, 146 Ill. App. 3d at 392), there is no indication in this case that an entrapment defense was available. The informant was merely a tipster. He in no way participated in the search of the apartment or in any crime for which defendant was arrested. Furthermore, there is no evidence in the record that defendant was prevented from presenting his defense. This was not a situation where entrapment was a possible defense. Defendant testified that not only did he not live in the apartment, but that he did not even see the State's exhibits in the apartment. Accordingly, we affirm the trial court's denial of defendant's motion to disclose the informant's identity.

Next, defendant asserts that the trial court erred by denying his motion to hold a *Franks* hearing. Defendant claims that the police officer-affiant made no attempt to corroborate any of the informant's information, that there was no comment on how the informant came into contact with the officer, that the officer never viewed any of the substance allegedly purchased by the informant, and that the complaint contained false statements.

Although a defendant may be entitled to an evidentiary hearing if the informant rather than the affiant is the source of false statements in a warrant affidavit, there must be evidence that the informant blatantly lied to the officer-affiant or that the information from the informant was substantially false. (*People v. Lucente* (1987), 116 Ill. 2d 133, 152, 506 N.E.2d 1269.) In addition, the United States Supreme Court held in *Franks* (438 U.S. at 155-56, 57 L. Ed. 2d at 672, 98 S. Ct. at 2676) that the fourth amendment requires that a hearing be held at the defendant's request if he or she makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit and if the allegedly false statement is necessary to the finding of probable cause.

In *Franks*, the Supreme Court explained the procedure as follows:

> "There is *** a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary

hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted *** is only that of the affiant, not of any nongovernmental informant." *Franks*, 438 U.S. at 171, 57 L. Ed. 2d at 682, 98 S. Ct. at 2684.

For a substantial preliminary showing, a defendant faced with anonymous-informant-based warrants is not required to establish what the alleged informant did or did not say. (*Lucente*, 116 Ill. 2d at 150, 506 N.E.2d 1269.) The precise standard lies between mere denials and proof by a preponderance of the evidence. (*Lucente*, 116 Ill. 2d at 152.) The determination must be based on a careful balancing of the statements in the warrant affidavit versus those in support of the defendant's challenge to the warrant. *Lucente*, 116 Ill. 2d at 152.

The Illinois Supreme Court has stated:

"*Franks* is intended to create a *limited* right to veracity challenges. In striking the balance between the concerns discussed above, the trial judge must keep in mind the presumption of validity of the search warrant and the limited nature of the exception to that presumption created by *Franks*. The judge should also consider that, in passing on the motion, the guilt or innocence of the defendant is not being determined. The end sought by the motion is the suppression of evidence through the application of the exclusionary rule as a sanction against the officers for an alleged fourth amendment violation. ***

*** [T]he trial court's judgment [will not be disturbed if it] is exercised within permissible limits." (Emphasis in original.) *Lucente*, 116 Ill. 2d at 153.

■ In this case, defendant did not make a substantial preliminary showing that either the affiant or confidential informant made any false statements knowingly or in reckless disregard for the truth. Officer Brown stated in his complaint that he had a conversation with a confidential and reliable informant, whom he had known for a year. The informant had given Brown narcotic-related information at least four times during the prior six months. Each time, the information resulted in the seizure of a controlled substance and arrests.

According to Brown, the informant stated that he went to 6530 S. Martin Luther King Drive, apartment 3A, on May 31, 1990, where he purchased cocaine from a black man named Tyce. The informant stated that Tyce and a black woman he did not know lived in the apartment. He provided a physical description of Tyce and a detailed explanation of the drug transaction.

In his affidavit challenging the search warrant, defendant declared that he was at Emily Easley's apartment at 6530 S. Martin Luther King Drive, apartment 3A, on May 31, 1990, although he lived at 6036 S. Wood Street. Defendant stated that he went to Easley's apartment after he and Marcus Gardner worked on Easley's car. While he was in the apartment, Easley's former boyfriend and another person knocked on the door and asked for Easley. The two people left in anger. Defendant denied selling drugs to anyone at that apartment on that day.

Contrary to defendant's assertions, his affidavit was not a showing that the complaint for a search warrant contained facts that were false or in conscious disregard of the truth. In denying defendant's motion, the trial court observed that he admitted in his affidavit that he was at the apartment on May 31, 1990, when the alleged narcotics buy was made by the informant. Thus, the trial court found that there was sufficient probable cause to issue the search warrant. After considering the record, we conclude that the trial court did not err by denying defendant a *Franks* hearing.

Next, defendant asserts that the trial court erred when it denied his motion to suppress statements on the ground that he was repeatedly attacked by Officer Brown and that he did not make a statement to the police. The trial court denied the motion after considering all the evidence presented and the credibility of the witnesses. The trial court's findings were as follows:

"[I]f a statement was given, it was not the product of any coercion, physical, mental or otherwise. In fact, the defendant has testified it was not the product of any coercion. He has testified there was no statement. And I do believe that indicates there was no coercion, physical or otherwise.

The court also believes that, as the officers testified to, as far as their rendition the statement was given voluntarily and not in response to any question purported by the police officers. It was also given after a proper advisement of the Miranda Rights."

The trial court's finding was not against the manifest weight of the evidence, which supports the police officers' claims that no abuse occurred. A trial court's finding that a confession was voluntary will not be overturned unless it is against the manifest weight of

the evidence. *People v. Jones* (1993), 156 Ill. 2d 225, 242-43, 620 N.E.2d 325; *People v. Prim* (1972), 53 Ill. 2d 62, 70, 289 N.E.2d 601.

Although defendant alleges that his face was swollen when he entered the Cook County jail, no photograph is in the record. As a result, we cannot consider it in this appeal. Appellate review is limited to the record presented on review. (*Teitelbaum v. Reliable Welding Co.* (1982), 106 Ill. App. 3d 651, 661, 435 N.E.2d 852.) An appellant is obligated to provide a complete record containing all matters relevant to the issues he raises on appeal, and any doubt arising from an incomplete record is resolved against him. (*In re Estate of Jacobs* (1989), 189 Ill. App. 3d 625, 629, 545 N.E.2d 502.) Moreover, the photograph went back to the jury and the jury was instructed to weigh all the circumstances under which the alleged statement was given.

Furthermore, Dr. Gibson's testimony is inconclusive. Although defendant had a perforated left eardrum five weeks after his arrest, while he was out on bail, there was no evidence that it was caused by Officer Brown. Thus, we conclude that the trial court's determination was not against the manifest weight of the evidence.

Next, defendant asserts that he was prejudiced by Officer Brown's improper and irrelevant testimony relating to statistics involving cocaine arrests, guns, and drug paraphernalia. Defendant argues that Officer Brown improperly testified as an expert without being qualified as an expert.

■ We agree. It was error for Officer Brown to testify regarding the statistics of arrests of drug dealers involving cocaine and recovery of various items. Such evidence can be highly prejudicial and give undue weight to items found at the scene. Although we do not approve of the use of such statistics in a trial, the error was harmless due to the overwhelming nature of the evidence against defendant. The statistics were not prejudicial in this case because the evidence was not closely balanced.

Next, defendant objected to the admission into evidence of various guns, ammunition, a portable telephone, a police scanner, a scale, and a plastic bottle containing a white substance. Defendant argues that the admission of that evidence was improper because there was no evidence to connect it with the crime.

■ We disagree. Circumstantial evidence of the intent to deliver a controlled substance can include a large amount of drugs and weapons (*People v. Jones* (1994), 269 Ill. App. 3d 797; *People v. Robinson* (1992), 233 Ill. App. 3d 278, 288, 598 N.E.2d 1348; *People v. Brown* (1992), 232 Ill. App. 3d 885, 902, 598 N.E.2d 948), paraphernalia used in the sale of drugs (*People v. Rouser* (1990), 199 Ill. App. 3d 1062, 557

N.E.2d 928), a grinder, a scale (*People v. Schaefer* (1985), 133 Ill. App. 3d 697, 479 N.E.2d 428), a cellular telephone, and a programmable scanner (*People v. Bradford* (1993), 239 Ill. App. 3d 796, 800, 607 N.E.2d 625). Thus, we find no error in admitting this evidence, which was probative of defendant's intent to deliver a controlled substance.

Defendant then asserts that the State failed to prove him guilty beyond a reasonable doubt. Defendant argues that none of the evidence presented at trial was linked to him except the two bags of drugs allegedly dropped by him from the bedroom window.

We disagree. Defendant was proven guilty of possession of a controlled substance with the intent to deliver beyond a reasonable doubt. The jury considered all the evidence and observed the credibility of the witnesses. Credibility of the witnesses and the weight given their testimony are exclusively within the province of the jury (*People v. Mullen* (1990), 141 Ill. 2d 394, 403, 566 N.E.2d 222) and any conflicts in the testimony are to be resolved by the jury. *People v. Collins* (1985), 106 Ill. 2d 237, 261-62, 478 N.E.2d 267.

After viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Collins*, 106 Ill. 2d at 261.) The relevant evidence that supported the conviction included the presence of drug trafficking paraphernalia (*Bradford*, 239 Ill. App. 3d at 799-800), a large amount of drugs and weapons (*Jones*, 269 Ill. App. 3d 797; *Robinson*, 233 Ill. App. 3d at 288; *Brown*, 232 Ill. App. 3d at 902), a grinder, a scale (*Schaefer*, 133 Ill. App. 3d 697, 479 N.E.2d 428), a cellular telephone, and a programmable scanner (*Bradford*, 239 Ill. App. 3d at 800).

Finally, we decline to address defendant's remaining issues, which were either waived or lacked merit.

Based on the foregoing, we affirm the circuit court judgment.

Affirmed.

GREIMAN, P.J., and RIZZI, J., concur.