THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD NEMECEK, Defendant-Appellant.

First District (4th Division)   No. 1—93—1629

Opinion filed December 28, 1995.

George M. Zuganelis, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Andrea Bonin, and James Navarre, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAHILL delivered the opinion of the court:

A jury found defendant guilty of armed violence and possession of a controlled substance. He was sentenced to 15 years for armed violence and two years concurrently for possession of a controlled substance. We affirm.

Kevin Manion testified at trial that he was drinking at Fagan's tavern in Berwyn, Illinois, at 10 a.m. on October 28, 1991. He said that there were about eight people in the tavern, including defendant, Ronald Nemecek. He said Nemecek argued with a man named Kavanaugh about money missing from the surface of the bar. Nemecek left the tavern, but soon returned with a gun he waved at Kavanaugh. A patron phoned the police. Nemecek left the tavern and entered a car driven by Phyllis Domas (Phyllis Domas married Ronald Nemecek before trial and testified as Phyllis Nemecek).

Berwyn police officer Gregory Catena testified that he responded to an emergency call on the morning of October 28 with his partner, Officer Bojovic. The emergency call described a man with a gun who had just left Fagan's tavern in a car. The call described the car and gave its license number. Meanwhile, Berwyn police officer Gennett and his partner, in a separate squad car, saw the car and stopped it. Catena and Bojovic arrived and approached the car. Phyllis and Nemecek exited the car. Bojovic searched the vehicle and found a gun under the passenger seat where Nemecek had been sitting. Catena arrested Nemecek.

Before Officer Catena searched Nemecek, he asked him if he had anything in his pockets. Nemecek said he had a "rig" in his left pants pocket. "Rig" is a street term for a hypodermic needle and syringe. Catena recovered two needles, a syringe, and a spoon coated with residue. Nemecek was charged with and indicted for armed violence, unlawful use of a weapon, and possession of a controlled substance.

In addition to the testimony of Manion and the police officers, the State offered evidence at trial that the residue on the spoon recovered from Nemecek tested positive for cocaine and heroin.

Phyllis Nemecek testified for the defense. She said that she found the gun in a desk drawer while cleaning her home. She did not know what to do with the gun so she placed it under the passenger seat of her car. She identified the gun at trial as the one found under the seat of her car, but said Nemecek did not know the gun was there. The State on cross-examination asked Phyllis if she told the police the gun was hers when Nemecek was arrested. She said she did not.

Jennifer Johnson, Phyllis' daughter, testified that she was cleaning the family basement of her mother's home when Phyllis found

the gun in a desk drawer. She said that after her mother found the gun she never saw the gun again until she saw it in court the day she testified. On cross-examination Johnson said that she remembered the day her mother found the gun and was certain that the gun in court was the gun her mother found.

John Sakala, a friend of Nemecek, testified that he was at Fagan's tavern on the morning of the arrest. Sakala said that he was drinking with Nemecek and that he never saw him argue or wave a gun. Sakala said that he left the bar shortly after Nemecek.

Terrence Broussard testified he was at Fagan's on the morning of the arrest. He saw Nemecek at the bar, but never saw him argue or wave a gun. He said that Phyllis entered the tavern and Nemecek left with her. Broussard admitted during cross-examination that he remembered hearing about a gun.

Defendant raises numerous issues in his brief, posing alternative theories as he goes along and raising arguments for the inefficiency of counsel throughout. The arguments are difficult to follow.

We have chosen to track the issues as presented in the State's brief, where an effort has been made to word the issues clearly and without argument. Defendant argues: (1) the indictment was improperly amended shortly before trial; (2) he was prejudiced by the denial of a continuance; (3) the evidence was insufficient to prove defendant guilty of armed violence and possession of a controlled substance; (4) the sentence was an abuse of discretion; (5) the jury ‧ was improperly instructed; (6) the prosecution made improper remarks in closing argument; (7) the prosecution conducted improper cross-examination; (8) a ruling that the State could use defendant's prior convictions to impeach if he testified was improper; (9) the jury was coerced by a threat of sequestration; and (10) defense counsel was inefficient in numerous instances.

■ The argument that the indictment was improperly amended is based upon a ruling by the trial court shortly before trial that the State could delete from the armed violence charge the words "with intent to deliver" from the possession charge that established the predicate felony for armed violence. The defendant's argument deliberately overlooks the third count of the indictment charging the defendant only with possession of heroin. Section 111—5 of the Code of Criminal Procedure of 1963 permits amendment of an indictment to correct formal defects, including a miswriting. (Ill. Rev. Stat. 1989, ch. 38, par. 111—5; *People v. Wallace* (1991), 210 Ill. App. 3d 325, 335, 568 N.E.2d 1332.) An amendment is allowed if the change is not material or does not alter the nature and elements of the offense charged. *People v. Hirsch* (1991), 221 Ill. App. 3d 772, 777, 582 N.E.2d 1228.

The prosecution tendered the grand jury transcript in support of the motion to amend in this case. The transcript established that the grand jury heard testimony only with respect to possession and returned an indictment on that charge. We find no error in the court's ruling allowing the motion to amend. See *People v. Flores* (1993), 250 Ill. App. 3d 399, 621 N.E.2d 142.

■ Defendant next argues that the denial of a defense motion for a 30-day continuance after the indictment was amended prejudiced his right to a fair trial. The record reveals the opposite. Defense counsel stated on the day of trial: "[The assistant State's Attorney] was certainly courteous enough, as a fellow attorney, to tell me yesterday that they intended to [amend the indictment], so I am not going to stand up and tell you, on the day of trial, this is taking me by surprise." Nevertheless, the court postponed receiving evidence in the trial until the following day. The denial of a continuance will not be overturned absent an abuse of discretion. *People v. Johnson* (1991), 220 Ill. App. 3d 550, 581 N.E.2d 118.

■ Defendant's third argument first suggests the evidence was insufficient to prove him guilty of armed violence when there is no evidence in the record that he knew the gun was under the passenger seat of the car. He points out that the statute requires the State to prove that he was "armed with a dangerous weapon." He does not point out that "armed" is defined in the statute as carrying on or about one's person a weapon or being "otherwise armed." (Ill. Rev. Stat. 1989, ch. 38, par. 33A—1.) Our supreme court has interpreted "otherwise armed" to mean immediate access to or timely control over a weapon. *People v. Condon* (1992), 148 Ill. 2d 96, 110, 592 N.E.2d 951; *People v. Harre* (1993), 155 Ill. 2d 392, 396, 614 N.E.2d 1235.

■ The second part of defendant's third argument suggests that he could not be convicted of possession of a controlled substance based upon a trace amount of heroin found on the spoon in his possession. Under section 402(c) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1989, ch. 56$^1$/$_2$, par. 1402(c)), the prosecution is not required to establish a precise amount, but only that some quantity of a controlled substance is present. There is no minimum required quantity that must be proved to sustain a conviction. (See *People v. Horton* (1973), 15 Ill. App. 3d 51, 303 N.E.2d 534; *People v. McNeely* (1981), 99 Ill. App. 3d 1021, 426 N.E.2d 296.) Defendant cites *Lord v. State* (Fla. Dist. Ct. App. 1993), 616 So. 2d 1065, a 1993 Florida case overturning a conviction for possession of cocaine based upon trace amounts of cocaine found on a dollar bill in defendant's possession. The reasoning in the Florida case was based upon the observation

that cocaine in south Florida "is so pervasive that microscopic traces of the drug can be found on much of the currency circulating in the area." (*Lord*, 616 So. 2d at 1066.) The reasoning breaks down when applied to the facts before us. Defendant was arrested with the paraphernalia needed to ingest heroin and admitted to using the drug that morning.

■ Part of defendant's argument that he was not convicted of armed violence and possession beyond a reasonable doubt seems to be based upon a theory that the jury convicted him of armed violence on evidence that he waved the gun in the tavern at a time when there was no evidence that he possessed heroin, then used the evidence of possession in the course of his later arrest to relate back to possession of the gun in the tavern. The argument rests on defendant's assumption that he could not be found to possess the gun when the evidence at the time of the arrest revealed that the gun was under the seat of the car. The law is otherwise. The jury was given Illinois Pattern Jury Instructions, Criminal, No. 4.16 (3d ed. 1992) (hereinafter IPI Criminal 3d), which sets out the law of actual or constructive possession. Under the instruction and the evidence at trial, the jury could have reasonably concluded that the defendant possessed the gun under the seat and was "armed" within the meaning of the armed violence statute. A conviction will not be overturned unless a rational trier of fact could not have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.

■ We find no merit to defendant's fourth argument, that the sentence of 15 years was an abuse of discretion. Armed violence while armed with a category I weapon (the evidence established that the gun in defendant's possession was a .357 magnum handgun) is a Class X felony punishable by 6 to 30 years in prison. (Ill. Rev. Stat. 1991, ch. 38, par. 1005—8—1(a)(3).) The State at sentencing established six felony convictions in the preceding decade. The defendant was imprisoned for each of them. He was on parole when this offense occurred. The trial judge pointed out that the defendant's criminal record was "terrible." He was correct. But in response to defense counsel's argument in mitigation, the trial judge reduced his proposed sentence from 18 to 15 years.

■ An improper jury instruction is offered as defendant's fifth argument. He suggests that IPI Criminal 3d No. 4.16 was improper because constructive possession is insufficient to establish the "otherwise armed" language of the armed violence statue. *Condon* and *Harre* are dispositive of the issue, as we noted earlier. *Condon*, 148 Ill. 2d at 110; *Harre*, 155 Ill. 2d at 396.

■ The defendant's sixth argument alleges an improper remark in closing argument, when the prosecutor suggested it was improbable that a "girl" would be driving around with a .357 magnum in her car. The test for measuring prejudice in closing argument is straightforward: the prejudice must be substantial enough that, in its absence, the verdict would have been different. (*People v. Morgan* (1986), 112 Ill. 2d 111, 492 N.E.2d 1303.) The prosecutor's remark here, in response to a defense closing argument that Phyllis placed the gun in the car without defendant's knowledge, does not meet the *Morgan* test.

■ The defendant's seventh argument suggests that the prosecutor engaged in improper cross-examination of the defendant's wife when he established that the exculpatory testimony offered at trial was not revealed to the police at the time of the arrest, when there was an opportunity to do so. Evidence that a witness failed to give exculpatory information is admissible to impeach. (*People v. Andras* (1992), 241 Ill. App. 3d 28, 608 N.E.2d 310.) The trial court has broad discretion in allowing such cross-examination. (See *People v. Hastings* (1987), 161 Ill. App. 3d 714, 719, 515 N.E.2d 260.) We find no error.

■ The defendant, in his eighth argument, claims that the trial court erred in denying a motion *in limine* that would have prohibited the prosecution from introducing prior convictions if the defendant testified. The trial court's ruling was clearly within the guidelines of *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695.

■ The defendant next argues that the jury was coerced by a threat of sequestration. The record reveals that after 5 hours and 45 minutes of deliberation, the court instructed the bailiff to inform the jury that they should stop deliberations and that they would be sequestered for the night. It was 8:30 p.m. The jury asked for an additional 5 or 10 minutes to deliberate. They then returned their verdicts. There is no evidence in the record that there was an intent to influence or improperly hasten the verdict in this case. The trial court noted that the sheriff was merely performing his duties in preparing to house the jury for the night. See *People v. Defyn* (1991), 222 Ill. App. 3d 504, 516, 584 N.E.2d 220.

■ Finally, defendant on appeal raises some nine instances where he claims trial counsel was ineffective. None are supported by case citation where trial counsel were found to be inefficient in circumstances arguably similar to those before us. But at one point appellate counsel alleges that trial counsel was nothing more than "a warm body with a legal pedigree." At another point he argues defense counsel's "shock/ surprise/ flabbergasted mental state caused by being forced to trial on the very day of the substantial amendment,

250

arguably so upset counsel's equilibrium that he made other major lawyering blunders affecting the constitutional validity of the other conviction count as well." No citations to the record in support of this statement are furnished. Nothing in the record supports the allegation made by appellate counsel about trial counsel's "mental state." The careful use of hyperbole is often effective in the hands of a lawyer with a subtle pen and an intimate knowledge of discrepancies in a trial record. In less able hands, hyperbole is more often mean-spirited noise. Of all the arguments raised in this less than admirable brief, the attacks on trial counsel are the most disturbing. Pointing out the inefficiency of trial counsel with citations to the record and relevant case law is appropriate. Gratuitous attacks on trial counsel are not.

Affirmed.

HOFFMAN, P.J., and S. O'BRIEN, J., concur.