FOURTH DIVISION

MARCH 19, 1998

No. 1--96--4306

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

ROBAIRE MCCOY,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

No. 93--CR--28532

Honorable

Leo E. Holt,

Judge Presiding.

PRESIDING JUSTICE CERDA delivered the opinion of the court:

Following a bench trial, defendant, Robaire McCoy, was convicted of possession of a controlled substance with the intent to deliver (720 ILCS 570/401 (West 1992)) and possession of cannabis with the intent to deliver (720 ILCS 550/5 (West 1992)).  He was sentenced to concurrent sentences of six years' and four years' imprisonment.  On appeal, defendant asserts that (1) the trial court erred when it allowed the State to amend the information; (2) his right to a speedy trial was violated; (3) he was not proven guilty beyond a reasonable doubt; (4) the trial court erred when it denied him a 
Franks
 hearing; (5) his statement was involuntary; and (6) the trial court erred when it did not allow certain testimony.  For the following reasons, we affirm.

On October 11, 1993, Chicago police detective Robert O'Neill filed a complaint requesting a warrant to search the person of a black man named Tony, who was approximately 25 years old, 5 foot 10 inches tall, and 320 pounds, and the second floor apartment at 9221 South Laflin Street, Chicago.  In his complaint, Detective O'Neill stated that an informant told him that the informant was at the apartment on October 10, 1993.  After Tony let the informant into the apartment, he and Tony discussed the sale of white heroin.  Tony went to a different part of the apartment and returned with a paper bag, from which he removed a large plastic bag containing a white powder and an electronic scale.  After weighing a portion of the white powder, Tony gave it to the informant, who gave Tony $40 in return.  The informant tested the powder on his tongue and determined it to be heroin.  O'Neill further stated that he had known the informant for at least one year.  During the previous six months, the informant had given O'Neill information three times, which led to the recovery of heroin, cocaine, and unlawfully possessed firearms.  

According to O'Neill's testimony at the hearing to suppress defendant's statements, he and five other police officers went to the second floor apartment at 9221 South Laflin Street at 9 p.m. on October 11, 1993.  When defendant answered the door, O'Neill learned that he was Tony, then gave him the search warrant.   Detective Dennis Cullom advised defendant of his 
Miranda
 rights.  Tracy Pitts, the mother of defendant's son, was 15 to 20 feet away.  O'Neill denied that he or any other police officer threatened to arrest Pitts or take her three-year-old son to the Department of Children and Family Services (DCFS) if defendant did not confess to criminal activity.  O'Neill spoke to Alicea McCoy, defendant's mother, when she came to the apartment door during the search, but did not allow her into the apartment.  O'Neill denied ever telling McCoy that Pitts might be arrested and her son taken to the DCFS. 

Chicago police detective Dennis Cullom and Chicago police officer Steven Worshum testified that neither they nor any other police officer in their presence threatened to arrest Pitts or take her son to DCFS if defendant failed to confess to criminal activity.  

Tracy Pitts testified that she answered the door when the police arrived.  Defendant was sitting in the living room, playing a video game.  Their three-year-old son was also present. The police officers told Pitts to sit in the living room and asked defendant for his name.  Pitts did not see anyone hand defendant the search warrant and did not hear anyone give defendant his 
Miranda
 rights.  According to Pitts, the police officers threatened to arrest her and take her son away if defendant did not tell them if he had any weapons or drugs in the apartment. 

Alicea McCoy testified that she lives on the third floor of 9221 South Laflin Street.  On October 11, 1993, she went to her son's apartment after hearing noises, but the officer at the door would not let her enter the apartment.  In the hallway, Officer O'Neill told McCoy that they were going to arrest Pitts and call DCFS to take her grandson if she did not talk with her son about cooperating with the police.  

Defendant testified that he was seated in front of the television when Pitts answered the door to the police.  They told her to sit on the sofa, then began questioning defendant.  They did not give him a copy of the search warrant or advise him of his 
Miranda
 rights, but did ask if there were weapons or narcotics in the apartment.  After defendant's mother came to the apartment, defendant spoke with her in the hallway.  There, O'Neill threatened to arrest Pitts and take her son to DCFS if defendant did not cooperate with them.

Based on its determination that the State's witnesses were more credible than defendant's witnesses, the trial court found that Officer Cullom advised defendant of his 
Miranda
 rights before any interrogation occurred.  The court also found that defendant's statements were not involuntary due to threats or coercion by the police.  As a result, the court denied defendant's two motions to quash statements.   

On January 24, 1996, the State asked that they be allowed to amend count 1 of the information to read "heroin" instead of "cocaine" because "cocaine" was a misprint.  The trial court allowed the amendment on the basis that it was a formal defect.

At trial, Officer Worshum testified that he searched the bedroom located off the dining room.  In the closet, he found suspected marijuana, white powder, some electronic scales containing white powder residue, a strainer with brown residue, a box of clear sandwich bags, numerous zip-lock bags, empty capsules, a small silver spoon, approximately 50 small silver tinfoil packets, small red plastic envelopes, and three bottles of Dormin, one of which contained pills.  In the dresser, Worshum found an Illinois State I.D. card, an electric bill, a gas bill, a Chicago parking ticket notice, and an Illinois Environmental Protection Agency notice, all with defendant's name and address.  According to Worshum, there was large male clothing in the dresser and closet in the bedroom.  The clothing would be suitable for defendant, who was about 5 feet 11 inches tall and over 270 pounds.  

There was a stipulation that Arthur Kruski, a Chicago Police Department forensic chemist, analyzed the contents of the inventory.  It contained 532.6 grams of cannabis and 45.78 grams of heroin.  

Alicea McCoy testified that defendant had a roommate, Reginald Robinson, on October 11, 1993.  McCoy stated that defendant resided in the front bedroom, near the front door, and Robinson resided in the middle bedroom, off the dining room.  

Defendant testified that his bedroom was off the front door and Robinson's bedroom was off the dining room.  At the time of trial, Robinson was in a federal prison in Duluth, Minnesota.  Defendant described Robinson as one-half inch taller and 100 pounds lighter than himself. 

After closing arguments, the trial court found defendant guilty of possession of heroin and marijuana with intent to deliver.  The court found that defendant had constructive possession of the contraband confiscated, based on the several pieces of defendant's identification and large male clothing found in the bedroom where the drugs and paraphernalia were found.  The court determined that the clothes were defendant's,  considering the disparate sizes of defendant and Robinson.  Subsequently, defendant was sentenced to concurrent sentences of six years' imprisonment for the heroin conviction and four years' imprisonment for the marijuana conviction. 

Defendant's first assertion is that the trial court erred when it allowed the State to amend the information from possession of cocaine with an intent to deliver to possession of heroin with an intent to deliver.  The State contends that the change was a formal change, but defendant argues that it was a substantive change.  

Although a trial court's determination as to whether a charging instrument complied with statutory requirements is subject to 
de novo
 review (
People v. Wilkinson
, 285 Ill. App. 3d 727, 732, 674 N.E.2d 794 (1996)), an abuse of discretion standard is used when reviewing the trial court's decision to allow or deny an amendment to the charging instrument (
People v. Wallace
, 106 Ill. App. 3d 580, 583, 435 N.E.2d 1322 (1982)).  

Section 111-5 of the Criminal Code permits a charging instrument to be amended to correct formal defects, including a miswriting.  725 ILCS 5/111-5 (West 1996); 
People v. Dunskus
, 282 Ill. App. 3d 912, 916, 668 N.E.2d 1138 (1996); 
People v. Nemecek
, 277 Ill. App. 3d 243, 246, 660 N.E.2d 133 (1995).
  The amendment is permissible if the change is not material or does not alter the nature and elements of the offense charged.  
Dunskus
, 282 Ill. App. 3d at 916-17; 
Nemecek
, 277 Ill. App. 3d at 246.  A formal amendment is warranted especially where there is no resulting surprise or prejudice to the defendant or where the record shows that he was otherwise aware of the actual charge.  
Dunskus
, 282 Ill. App. 3d at 917.  If an amendment to an information corrected a formal defect, no reverification is required.  
People v. Hewitt
, 212 Ill. App. 3d 496, 504, 571 N.E.2d 223 (1991).

This case is similar to 
People v. Flores
, 250 Ill. App. 3d 399, 621 N.E.2d 142 (1993), on which the State relies.  In 
Flores
, the defendant was charged with three counts of delivery of a controlled substance.  Two counts involved cocaine, and one count involved heroin.  
Flores
, 250 Ill. App. 3d at 399.  However, during the trial, a police officer testified that he purchased cocaine from the defendant three times and there was a stipulation that the substance sold on all three occasions was cocaine.  
Flores
, 250 Ill. App. 3d at 400.  

During closing arguments, the trial court allowed the State to amend the heroin count to cocaine.  
Flores
, 250 Ill. App. 3d at 400.  The appellate court affirmed the conviction because the amendment changed the type of controlled substance to reflect what the grand jury intended to charge, which was delivery of cocaine.  
Flores
, 250 Ill. App. 3d at 403.  Although the indictment technically specified the substance as heroin, the testimony before the grand jury established unequivocally that the substance delivered was cocaine, not heroin.  
Flores
, 250 Ill. App. 3d at 402.  Similarly, all the evidence at trial pertained exclusively to cocaine.  
Flores
, 250 Ill. App. 3d at 402.  As a result, the court concluded that the amendment was formal and did not surprise or prejudice the defendant.  
Flores
, 250 Ill. App. 3d at 403.  

In this case,
 the original complaint, verified by Detective O'Neill on October 12, 1993, charged defendant with the possession of white heroin.  At the preliminary hearing on November 23, 1993, Detective O'Neill testified that the white powder found in defendant's bedroom was sent to the crime lab, where it tested positive for 45.78 grams of heroin.  Nevertheless, in error, the information, verified on December 6, 1993, charged defendant with possession of cocaine with the intent to deliver.  On January 24, 1996, four months before trial, the State was allowed to amend the information to read "heroin" instead of "cocaine" because "cocaine" was a miswriting.  The amendment was allowed by interlineation without reverification.  

Given all the evidence, we conclude that "cocaine" in the information was in fact a miswriting.  It is clear that the State intended to charge defendant with possession of heroin with the intent to deliver, not cocaine.  The original complaint, the testimony at the preliminary hearing, and the lab report indicated that the substance involved was white heroin, not cocaine.  Thus, we find that the amendment properly corrected a formal defect and did not need to be reverified.

Next, defendant argues that his right to a speedy trial was violated because the State made a substantive change to the information more than 700 days after he had demanded trial.  Because we have determined that the amendment to the information corrected a formal defect, defendant's argument fails.

Defendant also asserts that the State failed to prove him guilty beyond a reasonable doubt because it failed to prove that he had constructive possession of the heroin and cannabis.  

We disagree.  The record shows that the trial court carefully considered the evidence when determining whether defendant had constructive possession.  The court found that defendant had constructive possession of the contraband confiscated, based on the several pieces of defendant's identification and the large male clothing found in the bedroom.

To sustain a charge of unlawful possession of a controlled substance, the State must prove that the defendant knew of the presence of the substance and that the substance was in the defendant's immediate and exclusive control.  
People v. Frieberg
, 147 Ill. 2d 326, 361, 589 N.E.2d 508 (1992); 
People v. Walensky
, 286 Ill. App. 3d 82, 98, 675 N.E.2d 952 (1996).  Possession of drugs may be constructive, which exists without actual personal present dominion over a controlled substance if there is an intent and capability to maintain control and dominion.  
Frieberg
, 147 Ill. 2d at 361.  If the narcotics are found on the premises rather than on the defendant, the State must prove that the defendant had control of the premises in order to permit the inference that the defendant had knowledge and control over the narcotics.  
Frieberg
, 147 Ill. 2d at 361; 
People v. Valdez
, 249 Ill. App. 3d 1058, 1062, 621 N.E.2d 35 (1993).  
Possession may be proved by circumstantial evidence.  
Walensky
, 286 Ill. App. 3d at 98; 
Valdez
, 249 Ill. App. 3d at 1063
. 

When the sufficiency of the evidence is challenged, a criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt.  
People v. Gilliam
, 172 Ill. 2d 484, 515, 670 N.E.2d 606 (1996); 
People v. McDonald
, 168 Ill. 2d 420, 443, 660 N.E.2d 832 (1995).  The reviewing court may not retry the defendant.  
People v. Rivera
, 166 Ill. 2d 279, 287, 652 N.E.2d 307 (1995).  Instead, the trier of fact has the responsibility to determine the credibility of the witnesses, the weight given their testimony, and the reasonable inferences to be drawn from the evidence.  
People v. Enis
, 163 Ill. 2d 367, 393, 645 N.E.2d 856
 (1994); 
People v. Mullen
, 141 Ill. 2d 394, 403, 566 N.E.2d 222 (1990).
  The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979); 
Gilliam
, 172 Ill. 2d at 515. 

Considering the evidence in the light most favorable to the prosecution, we find that defendant was proven guilty beyond a reasonable doubt.  The trial court carefully considered all the evidence when making its decision.  Because the evidence was not so improbable or unsatisfactory that it created a reasonable doubt of the defendant's guilt, we affirm the conviction.

Defendant's next assertion is that the trial court erred by denying a 
Frank
's hearing on the basis that Detective O'Neill, the affiant, knew or should have known that the information supplied by the informant was false.  

The U.S. Supreme Court held in 
Franks v. Delaware
, 438 U.S. 154, 155-56, 57 L. Ed. 2d 667, 672, 98 S. Ct. 2674, 2676 (1978), that the fourth amendment requires that a hearing be held at the defendant's request if he or she makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause.  
People v. Taylor
, 269 Ill. App. 3d 772, 779, 646 N.E.2d 1280 (1995).

In 
Franks
, the Supreme Court explained the procedure as follows:

"There is***a presumption of validity with respect to the affidavit supporting the search warrant.  To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross examine.  There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.  They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons.  Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.  Allegations of negligence or innocent mistake are insufficient.  The deliberate falsity or reckless disregard whose impeachment is permitted***is only that of the affiant, not of any non-governmental informant."  
Franks
, 438 U.S. at 171, 57 L. Ed. 2d at 682, 98 S. Ct. at 2684.

For a substantial preliminary showing, a defendant faced with anonymous-informant-based warrants is not required to establish what the alleged informant did or did not say.   
People v. Lucente
, 116 Ill. 2d 133, 150, 506 N.E.2d 1269 (1987); 
Taylor
, 269 Ill. App. 3d at 780.  The amount of proof required to trigger a hearing lies somewhere between mere denials by the defendant and proof by a preponderance of the evidence.  
Lucente
, 116 Ill. 2d at 152.  When the defendant's challenge is based on an alibi, the determination must be based on a careful balancing of the statements in the warrant affidavit versus those in support of the defendant's challenge to the warrant.  
Lucente
, 116 Ill. 2d at 152.  Whether the defendant has made a sufficient "substantial preliminary showing" is a matter within the trial court's discretion.  
People v. Phillips
, 265 Ill. App. 3d 438, 445, 637 N.E.2d 715 (1994).

The following cases are helpful.  In 
People v. Phillips
, 265 Ill. App. 3d 438, 445, 637 N.E.2d 715 (1994), the affidavits presented by the defendant that he did not sell drugs to anyone on the day in question did not rise to the level of making a substantial preliminary showing of a deliberate falsehood.  The affidavits were from the defendant, his mother, and a friend, all interested parties, which tend to be weaker support for a motion to quash the warrant.  
Phillips
, 265 Ill. App. 3d at 445.  More importantly, the affidavits did not establish that the defendant could not have sold cocaine to the informant on the day in question.  
Phillips
, 265 Ill. App. 3d at 445.  

First, the defendant's mother stated that she was in the apartment all day and did not observe any drug sales.  However, as the trial judge noted, the affidavit did not state whether the defendant's mother had a clear view of the door and the remainder of the premises.  
Phillips
, 265 Ill. App. 3d at 445.  Second, the defendant's friend asserted that he was asleep the entire day, which did not allow him to be aware of everyone who may have entered the apartment.  
Phillips
, 265 Ill. App. 3d at 445.  In the defendant's affidavit, he asserted that he was asleep the whole time, which did not create enough doubt concerning the truthfulness of the search warrant affidavit.  
Phillips
, 265 Ill. App. 3d at 445.

In 
People v. Tovar
, 169 Ill. App. 3d 986, 989, 523 N.E.2d 1178 (1988), the affidavit for the search warrant stated that the informant told the officer that on July 25, 1983, while he was in the second-floor apartment, he purchased two grams of heroin for $200 from an Hispanic man known as Domingo.  
Tovar
, 169 Ill. App. 3d at 989.  The informant said that he used a quantity of the brown powder purchased from Domingo and determined it to be heroin.  
Tovar
, 169 Ill. App. 3d at 989.  The informant had been a regular user of heroin and other controlled substances for the past five years.  
Tovar
, 169 Ill. App. 3d at 989.

To support his motion for a 
Franks
 hearing, the defendant presented two affidavits.  
Tovar
, 169 Ill. App. 3d at 991.  One was his own affidavit, saying that he went to work on that day, returned at 4:45 p.m., had dinner with his family, went out at 6 p.m. to visit friends, and did not return until 10:30 p.m.  
Tovar
, 169 Ill. App. 3d at 991.  The defendant also presented his wife's affidavit, which corroborated his affidavit.  
Tovar
, 169 Ill. App. 3d at 991.

The reviewing court ruled that the defendant was not entitled to an evidentiary hearing under 
Franks
.  
Tovar
, 169 Ill. App. 3d at 991.  Not only were the affidavits from interested parties, but they did not establish that it was impossible for the informant to have bought heroin from the defendant as he described.  
Tovar
, 169 Ill. App. 3d at 991.  

In 
People v. Torres
, 200 Ill. App. 3d 253, 263, 558 N.E.2d 645 (1990), the police officer stated in the affidavit for a search warrant that the informant was at the defendant's house within 48 hours before 4:05 p.m. on June 2.  The defendant attached her own affidavit, her babysitter's affidavit, and an affidavit by an employee of a moving company to her motion for a 
Franks
 hearing.  
Torres
, 200 Ill. App. 3d at 262-63.  Those affidavits asserted that the only people at the defendant's home on May 31, June 1, and June 2 were the defendant, her two children, her boyfriend, her babysitter, and employees of a moving company.  On May 31, the moving company employees were moving her furniture from 12 to 6 p.m., and on June 1, they were at the house from 12 to 8 p.m.  On June 2, the defendant left the house at 7:45 a.m. with her children and her babysitter and returned with the same occupants at 9 a.m.  The only person present when she returned was her boyfriend.  At 10:30 a.m., defendant left by herself and returned at 12:30 p.m.  The only people at the house until 4:30 p.m., when she left the house again, were her children and her babysitter.  The defendant returned to the house at 5:30 p.m.  At no time on June 2, 1988, did the defendant show anyone cocaine in her residence.  
Torres
, 200 Ill. App. 3d at 262.  The affidavits by the babysitter and the moving company employee essentially corroborated the defendant's affidavit.  
Torres
, 200 Ill. App. 3d at 262-63.

The appellate court ruled that the affidavits failed to establish a substantial preliminary showing under 
Franks
.  
Torres
, 200 Ill. App. 3d at 263.  The defendant's affidavit was merely a denial and the other affidavits did not cover the entire 48 hours.  
Torres
, 200 Ill. App. 3d at 263.  

In 
People v. Pavone
, 241 Ill. App. 3d 1001, 1003, 609 N.E.2d 906 (1993), the officer stated in the complaint for a search warrant that a confidential informant told him that on August 1, 1989, the informant purchased drugs from a white man known as Angelo.  Attached to the defendant's 
Franks
 motion was an affidavit from the defendant stating that he awoke at 1 p.m. on August 1, 1989, arrived at his place of business at 1:30 p.m., and discovered that his telephone had been disconnected.  
Pavone
, 241 Ill. App. 3d at 1006.  He went to a currency exchange to pay his phone bill and returned to work.  An affidavit from the defendant's wife corroborated the time the defendant left the house.  
Pavone
, 241 Ill. App. 3d at 1006.  An affidavit from the owner of the currency exchange stated that the defendant was at the currency exchange on the afternoon of August 1, 1989, and paid an overdue bill.  
Pavone
, 241 Ill. App. 3d at 1006.  Based on these affidavits, the trial court's decision denying defendant a 
Franks
 hearing was not an abuse of discretion.  
Pavone
, 241 Ill. App. 3d at 1006.

Based on the above cases and the evidence in this case, we conclude that the trial court did not abuse its discretion when it denied defendant's motion for a 
Franks
 hearing.  In his complaint for a search warrant, Detective O'Neill stated that an informant told him that he was at defendant's apartment on October 10, 1993.  Defendant submitted several affidavits with his motion for a 
Franks
 hearing.  In his own affidavit, he stated that his roommate and his roommate's girlfriend were in the roommate's room when defendant arrived home on the evening of October 9, 1993.  Defendant's mother woke him up at 8 a.m. on October 10, 1993.  Between 8:45 a.m. and 9 a.m., he spoke to his roommate before leaving the apartment building with his mother.  After picking up his grandmother, he took the two women shopping for about three hours.  When defendant returned to his apartment, his roommate and the roommate's girlfriend were there.  Defendant stayed in the apartment for five to ten minutes before going to his mother's apartment, where he stayed until a friend picked him up.  Defendant went to his friend's home until he returned to his apartment about 11 p.m.  Defendant immediately went to sleep and did not awake until 9 a.m. the next morning.

Defendant's mother stated in her affidavit that she woke defendant at 8 a.m. on October 10, 1993.  Between 9 and 9:30 a.m., defendant drove her to her mother's house.  After picking up her mother, the three of them went shopping and then to lunch.  After lunch, they went home.  At 1:15 p.m., defendant was in her apartment.  He called some friends to pick him up and stayed until they arrived.  Defendant's mother did not hear defendant return home before she went to bed around 10 p.m. that night.

Joseph Stamps, the friend who defendant called for a ride, stated in his affidavit that defendant called him at 1:15 p.m. on October 10, 1993.  Stamps's brother picked up defendant and took him to Stamps's home, where defendant stayed until Stamps drove him home, arriving at defendant's apartment between 11 and 11:15 p.m.

Angela Ross, defendant's roommate's girlfriend, stated in her affidavit that she and defendant's roommate were in defendant's apartment until 1:30 p.m. on October 10, 1993.  Defendant left around 9:30 a.m. and returned about 1:30 p.m.  She did not see anyone come to the apartment during the time defendant was in the apartment.  

Reginald Robinson, defendant's roommate, stated in an affidavit that defendant left the apartment at 9:30 a.m. and returned at 1:15 p.m. on October 10, 1993.  No one came to the apartment while defendant was there.  Robinson spoke briefly with defendant before leaving the apartment shortly after 1:15 p.m.  Robinson did not return until the next evening.

We find that the affidavits were not sufficient to establish that the trial court abused its discretion in denying defendant's motion for a 
Franks
 hearing.  Not only were the affidavits executed by interested parties, but there were times when defendant was in his apartment on October 10, 1993, during which time the informant could have purchased narcotics from him: between midnight and 9 a.m., the five or ten minutes when he returned from shopping, and after 11 p.m. when he returned home.   Next, defendant asserts that the statements he made during the search were involuntary because he was not given his 
Miranda
 rights and he was coerced by the police officer's threats against his son and the mother of his son.  Both arguments are meritless. The test for the voluntariness of a confession is whether, under the totality of the circumstances, the statement was made freely, without compulsion or inducement, with con­sideration given to the characteristics of the accused and the details of the inter­rogation.  
People v. Jones
, 156 Ill. 2d 225, 242
, 620 N.E.2d 325 (1993).  The trial court's function at the suppression hearing is to determine the credibility of the witnesses and to resolve any conflicts in their testimony.  
People v. Redd
, 135 Ill. 2d 252, 289, 553 N.E.2d 316 (1990).  The trial court's finding that a confession was voluntary will not be overturned by the reviewing court unless it is against the manifest weight of the evidence.  
Jones
, 156 Ill. 2d at 242-43;
 
Thomas
, 137 Ill. 2d at 516.  After considering the totality of the circumstances, we find that the trial court's denial of defendant's motion to suppress statements was not against the manifest weight of the evidence.

Finally, defendant argues that the trial court erred when it refused to allow testimony that defendant's roommate, Reginald Robinson, had previously been convicted of possession with the intent to distribute cocaine.  Defendant asserts that the excluded evidence was relevant under the theory of 
modus operandi
 to show that Robinson had sole possession of the heroin in this case.  We reject this argument.  The only evidence linking Robinson to the white heroin was testimony by defendant and his mother that the room where the heroin was found was Robinson's room, not defendant's.  However, the identification found in the room belonged to defendant and the clothes found were in defendant's size, not Robinson's size.  As a result, evidence of Robinson's previous conviction was irrelevant.

Based on the foregoing, we affirm the circuit court's judgment.

Affirmed.

McNamara, J., and Wolfson, J., concur.